# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE, FOR RASC 2006-EMX5, | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 4:23-cv-597 |
| KINGMAN HOLDINGS LLC, individually and as TRUSTEE FOR THE LOVE BIRD 218 LAND TRUST, MARK DISANTI, TED BLANCHARD, YASIR LAL, and MAHWISH LAL | § § § § § § § § | |
| *Defendants.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

U.S. Bank Trust National Association, as Trustee for RASC 2006-EMX5 ("U.S. Bank"), Plaintiff, files this suit complaining of Kingman Holdings, LLC, ("Kingman") Individually and as Trustee for the Love Bird 218 Land Trust and its sole member and alter ego Mark DiSanti ("DiSanti"), Ted Blanchard ("Blanchard"), Yasir Lal, and Mahwish Lal (Yasir and Mahwish Lal being collectively referred to as "Lal"), and states as follows:

### I.       PARTIES

1.       Plaintiff U.S. Bank Trust National Association, as Trustee for RASC 2006-EMX5, is the mortgagee of the loan agreement secured by the Property made subject of this suit, as that term is defined in Tex. Prop. Code §51.0001(4).

2.       Defendant Kingman Holdings LLC, sued both in its individual capacity and as Trustee for the Love Bird 218 Land Trust is a Delaware Corporation who may be served with

process through its registered agent in Texas, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas Texas 75201. Summons is requested.

3.      Defendant Mark DiSanti is an individual residing in Texas.  He may be served with process at his home address, 9090 Skillman Street, Dallas, Texas 75243, or wherever he may be found.  Summons is requested.

4.      Defendant Ted Blanchard is an individual residing in Texas.  He may be served with process at 5729 Lebanon Rd. #282, Frisco, Texas or wherever he may be found.  Summons is requested.

5.      Defendant Yasir Lal is an individual residing in Texas.  He may be served with process at his home address, 218 Love Bird Lane, Murphy, Texas 75094 or wherever he may be found.  Summons is requested.

6.      Defendant Mahwish Lal is an individual residing in Texas.  She may be served with process at her home address, 218 Love Bird Lane, Murphy, Texas 75094 or wherever she may be found.  Summons is requested.

## II.      DIVERSITY JURISDICTION

7.      The Court has jurisdiction over the controversy because there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $75,000.00. *See* 28 U.S.C. §1332.

8.      Plaintiff U.S. Bank is acting as Trustee Legal Title Trustee for Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Certificates, Series 2006-EMX5. U.S. Bank is a national banking association organized under federal law. U.S. Bank's citizenship is determined by the location of its main office as set forth in its articles of association. *See* 28 U.S.C. §1348; *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006). Under its articles of

association, Plaintiff's main office is located in Ohio. Therefore, Plaintiff is a citizen of Ohio for diversity purposes. *U.S. Bank N.A. v. Alliant Energy Res. Inc.*, No. 09-cv-078-bbc, 2009 WL 1850813, at *1 (W.D. Wis. June 26, 2009) ("…U.S. Bank National Association is a citizen of Ohio.").

9.      Defendant Kingman Holdings, LLC is a Delaware limited liability company.  A limited liability company is a citizen of the states of its members.  Kingman has a single member, Mark DiSanti.  DiSanti is a citizen of Texas.  Therefore Kingman Holdings, LLC is a citizen of Texas for diversity purposes.

10.      The remaining defendants, in addition to Defendant DiSanti, are individuals who reside in Texas and are Texas citizens.  The aforementioned individuals are Ted Blanchard, Yasir Lal and Mahwish Lal.

11.      In this lawsuit, Plaintiff seeks to quiet title and/or remove a cloud on title to real property owned by the Lals, and created by Kingman Holdings, LLC, Mark DiSanti and Ted Blanchard. Plaintiff's lien interest, which has been impaired by these defendants' actions, secures a home loan in excess of $150,000.00. Accordingly, the amount in controversy meets and exceeds the federal jurisdictional minimum of $75,000.00.

### III.    VENUE

12.      Venue is proper in the United States District Court for the Eastern District of Texas, Sherman Division, because this lawsuit concerns title to real property located in Collin County, Texas. *See* 28 USC §124(d)(1), 1391(b)(2).

### IV.    FACTUAL BACKGROUND

**A.    Origination of Wilmington's Debt and Lien.**

13.      On March 31, 2006, Boutang Vongprachanh and Sinakhone Vongprachanh obtained a home loan in the amount of $184,000.00. The original lender under the note was

Mortgage Lenders Network, USA, Inc. DBA Lenders Network. The note is secured by a deed of trust recorded in the real property records of Collin, County, Texas as Instrument No. 200604000436780. The deed of trust pledges real property commonly known as 218 Love Bird Lane, Murphy, Texas 75094 (the "Property") as security for the note.

14.     On May 9, 2011, the deed of trust was assigned by the original lender to U.S. Bank, National Association, as Trustee for RASC 2006-EMX5. The assignment is in the real property records of Collin County, Texas as Instrument No. 20110623000647620.

15.     The Property is also subject to the Declaration of Covenants, Conditions & Restrictions for Murphy Farms ("HOA Declaration"). The HOA Declaration, which creates an assessment lien securing the homeowner's obligation to pay homeowner's association dues, was recorded in the Official Public Records of Collin County, Texas at Instrument No. 20000321000270440.

16.     The Vongprachanhs failed to pay certain Association assessments, and the Association foreclosed its subordinate assessment lien on April 3, 2018. Kingman was the highest bidder at the Association's foreclosure sale and purchased the Property for $13,900.00. An Assessment Lien Deed was recorded in the Official Public Records of Collin County, Texas under Instrument No. 20180405000421750 (the "Assessment Lien Deed")

## B.     Defendant DiSanti's Modus Operandi Through Sham Entities

17.     Defendant DiSanti is a self-described real estate investor who utilizes an ethically challenged business plan to acquire residential property at homeowners' association foreclosure sales. Purchasing property at HOA foreclosure sales allows DiSanti to obtain title in real property for a few thousand dollars. DiSanti is able to purchase at such a low price because DiSanti purchases property subject to  the existing mortgage lien against the property. After DiSanti

acquires title to a particular property, he then files a lawsuit—in the name of a trust or corporate entity he controls—against the superior mortgage lienholder or servicer, and *serves* the mortgagee (or mortgage servicer) in various ways—sometimes based on completely false information—in order to obtain a default judgment discharging a superior mortgage lien.  DiSanti's conduct often misleads trial courts in the process. The court records of Dallas, Tarrant, Collin, and Denton counties are littered with literally dozens upon dozens of cases where DiSanti has obtained default judgments in this manner.  For DiSanti, history indicates that obtaining default judgments by whatever means necessary is part of his business plan.

18.     After DiSanti obtains a default judgment with respect to a specific property (the judgment purporting to discharge the mortgagee's deed of trust lien), DiSanti then proceeds to sell the property to unwitting individuals for fair market value.  After DiSanti defrauds these individuals, the mortgagee becomes aware of the defective default judgment and files a lawsuit seeking to unwind DiSanti's deceitful conduct.  In connection with the mortgagee's effort a clarifying the validity and imposition of its lien against the property, the unwitting individuals who purchased the property from DiSanti are also forced to defend title to the property as against the mortgagee.

19.     DiSanti has been engaging in this scheme, in various forms, since 2009. After a few years, title companies began issuing alerts for transactions involving DiSanti, and the title companies refused to insure title to the properties DiSanti was associated with. This effectively shut down DiSanti's scheme because without title insurance DiSanti found it impossible to obtain fair market value for his properties.

20.     To conceal his association from these transactions, DiSanti started purchasing properties in the name of various corporate entities he would set up, such as Defendant Kingman

Holdings, LLC. But, after title companies discovered DiSanti's ownership of these various corporate entities, DiSanti began using "land trusts" which allowed him to obscure his ownership and avoid corporate organizational costs.

21.    DiSanti also utilizes strawmen to further conceal the nature of his scheme. Defendant Blanchard is one such individual who provides real estate agent services to DiSanti. Blanchard is aware of DiSanti's business scheme(s) and frequently assists DiSanti in flipping title to property through various entities, and also assists DiSanti in marketing property for sale to unwitting third parties.

**C.    DiSanti's Implementation of the Scheme in this Case**

22.    Kingman purchased the Property at the HOA sale on behalf of a purported land trust. In a deft maneuver at improperly manipulating federal jurisdiction, Kingman observed that the mortgagee (Plaintiff) is a citizen of Ohio. As such, DiSanti replaced Kingman as trustee of the land trust with a company known as Ohio Gravy Biscuit, an Ohio Company. DiSanti made the switch in an effort at destroying diversity of citizenship and preventing Plaintiff from litigating over the Property in federal court as both Wilmington and the so-called Gravy Biscuit are citizens of Ohio. When the litigation threat passed (in the eyes of DiSanti), Ohio Gravy Biscuit was replaced as the trustee of the land trust with Kingman magically re-appearing as the trustee. Ohio Gravy Biscuit even caused a prior lawsuit brought by Wilmington to be dismissed from federal court (without prejudice) over this exact Property.

23.    DiSanti, acting true to form in trying to take a sham default judgment purporting to rob Plaintiff of its interest in the Property, and acting through Ohio Gravy Biscuit as his alter ego, orchestrated the filing of a lawsuit in Collin County, Texas under Cause No. 366-02457-2022. Through the lawsuit, DiSanti purportedly served another mortgagee (holding second note secured

by a second lien deed of trust in the Property) with process and thereafter took a default judgment against the mortgage of the second loan.  The second lien deed of trust is recorded in the real property of Collin County, Texas as Instrument No. 20060404000435780. The beneficiary under the second lien deed of trust, as reflected in the real property records, is U.S. Bank National Association, as Trustee for RASC 2006 **EMX6**. (emp. added).

24.    Plaintiff, U.S. Bank National Association, as Trustee for RASC 2006-**EMX5** (emp. added), was never made a party to the prior state court proceeding. Despite Plaintiff (EMX5) being uninvolved in the prior lawsuit, Gravy Biscuit took a judgment that purports to terminate, discharge, and render unenforceable Plaintiff's first lien deed of trust in the Property in addition to the deed of trust lien held by EMX6.

25.    The judgment taken by Gravy Biscuit was taken against Plaintiff (as trustee for EMX6) without notice or service and is therefore constitutionally infirm. The "[f]ailure to give notice violates 'the most rudimentary demands of due process of law.'" *Peralta v. Heights Medical Center, Inc.,* 485 U.S. 80, 108 S.Ct. 896 (1988) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 550, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). In light of *Peralta,* the Texas Supreme Court held in *PNS Stores* that "a judgment may also be challenged through a collateral attack [as opposed to only a bill of review] when a failure to establish personal jurisdiction violates due process." *PNS Stores, Inc. v. Rivera,* 379 S.W.2d 267 (Tex. 2012).

26.    While the second lienholder (EMX6) could certainly bring a bill of review in Texas state court to challenge the improper default judgment against it, Plaintiff herein (EMX5) was not a party to that litigation and can collaterally attack the prior judgment in this litigation given the denial of Plaintiff's due process rights. Parties like Plaintiff are not bound by those errant

judgments and can attack them collaterally. The Dallas Court of Appeals recognized as such in

*Kingman Holdings, LLC* when the court stated,

> **A nonparty can collaterally attack an existing judgment if the judgment directly and necessarily affects the nonparty's rights**. *TFHSP Series LLC v. MidFirst Bank*, No. 05–14– 00730–CV, 2015 WL 4653166, at *3 (Tex. App.– Dallas Aug. 6, 2015, no pet.) (mem. op.). "**For example, if a judgment deprives a creditor of its lien but the creditor was not joined in the suit, the creditor can collaterally attack the judgment to protect its interest in the property**." *Id.*; *see also Sec. State Bank & Trust v. Bexar Cty.*, 397 S.W.3d 715, 721– 24 (Tex. App.– San Antonio 2012, pet. denied). …After the expiration of the time to bring a direct attack, a litigant may only attack a judgment collaterally. *PNS Stores, Inc.*, 379 S.W.3d at 272.

*Kingman Holdings LLC v. MERS Corp.,* 2016 WL 8115937, *5 (Tex. App. – Dallas 2016)(emp.

added).

27.    Despite the default judgment against Plaintiff being void,  Defendant DiSanti,

attempted to conceal the encumbrances to title of the Property by and through various shell entities,

including Defendant Kingman as trustee for the fictious land trust. Defendant Blanchard assisted

in the transfer of title by executing, and having recorded, title documents purportedly conveying

the Property through sham entities to *"clean title."*  Defendant Blanchard also was involved in the

marketing and sale of the Property to the Lal's, concealing facts from the Lals and the title

company that Blanchard should have disclosed (such as his and DiSanti's prior title schemes and

the defective nature of the default judgment by which the Property appeared to not be subject to

Plaintiff's deed of trust lien interest).

## V.    CAUSES OF ACTION

### A.    Suit to Quiet Title against the Lal Defendants.

28.    Plaintiff seeks to quiet title to the Property with respect to its superior deed of trust

lien interest in the Property.  As the Lal Defendants are the defendants that are purportedly now in

title to the Property, Plaintiff's quiet title claim is directed at the Lal Defendants.  The elements of

the cause of action to quiet are that the plaintiff must show (1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable. *See, U.S. National Bank Association v. Johnson,* 2011 WL 6938507 at *3 (Tex. App.-Houston [1st Dist.] 2011, no pet.).

29.    Although appearing on its face to be valid, the default judgment obtained against Plaintiff is invalid and/or unenforceable as to Plaintiff. Plaintiff was not a party to the litigation in which the judgment was rendered and cannot be bound by it. The judgment purports to invalidate Plaintiff's deed of trust lien in the Property. Plaintiff's deed of trust lien is in all things superior to the Lal's interest in the real property obtained through the foreclosure of a junior lien.

30.    Plainly stated, a suit to quiet title exists for parties like Plaintiff, to enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right. A cloud on title exists herein given the errant judgment, while appearing valid on its face, is in fact invalid as to Plaintiff and affects or impairs Plaintiff's lien interest in the Property.

31.    Plaintiff has been damaged at least in the in the amount of the payoff of Plaintiff's secured note, such amount exceeding $150,000.00.  Further, Plaintiff has been forced to retain the undersigned counsel for which Plaintiff also seeks the recovery of its attorney's fees.

**B.    Declaratory Judgment.**

32.    Plaintiff seeks a declaratory judgment based upon the alleged conveyances of title out of Kingman, into the Lals, declaring those conveyances as void.  Declaratory judgment is appropriate when a real controversy exists between the parties, and the entire controversy may be determined by judicial declaration. The trial court is duty-bound to declare the rights of the parties as to those matters and has limited discretion to refuse a declaratory judgment, and may do so only

where judgment would not remove the uncertainty giving rise to the proceedings. *Spawglass Construction Corporation v. City of Houston*, 974 S.W.2d 876 (Tex. Civ. App – Houston 1998, no writ).

33.    The validity and superiority of a lien can be determined through a declaratory judgment action. *See Kingman Holdings, LLC v. Bank of Am., N.A.*, No. 4:11-cv-33, 2011 WL 4431970 at *3-4 (E.D. Tex. Sept. 22, 2011). Plaintiff seeks a declaration that Kingman's conveyance to 218LOVEBIRDLANE, Inc. is void.  Kingman, purporting to act as the alleged trustee for a land trust allegedly conveyed the Property to another entity in the chain of title. However, a land trust cannot exist without a written instrument creating it. Without a valid written instrument, there can be no valid conveyance to a land trust.  *See Wolfe v. Devon Energy Prod. Co., LP*, 382 S.W.3d 434, 445-46 (Tex. App.—Waco 2012, pet. denied)(finding no valid conveyance to a trust without a written instrument creating said trust.). No instrument creating such a land trust exists, or exists appointing Kingman as trustee, and the conveyances into or out of such a sham entity must be declared void. Further, Plaintiff seeks declaration that the deed to the Lals  was ineffective to convey title free and clear of Plaintiff's lien interest in the Property.

34.    To the extent the conveyances are not void then Plaintiff seeks declaratory relief that Kingman (and anyone taking title by through or under Kingman) has taken title to the Property subject to the superior deed of trust lien interest possessed by Plaintiff.

**C.    Violation of Tex. Civ. Prac. & Rem. Code. § 12.002 – Kingman**

35.    In this case as in many others, DiSanti, acting through his sham entities, including Kingman, and knowing that the default judgment obtained through misrepresentations made to the Court was void – went forward and recorded the void default judgment in the local real property records.  DiSanti then coordinated the filing a sham conveyance into various entities  with the help

of Defendant Blanchard who signed at least one of the transfer instruments with full knowledge of the scheme or plan to strip Plaintiff of its lien interest. The conveyances were also designed to trick title companies into issuing a title policy, in favor of the future purchasers of the Property (the Lals).

36.    The shams documents were recorded in the local real property records in order to create the appearance of a legitimate conveyance of arms-length transactions subsequent to Plaintiff's lien interest being declared invalid. In reality, the transaction was made-up by DiSanti, through his respective alter-ego land trust entities and Kingman as part of its lien-stripping plot against Plaintiff.

37.    It is clear from DiSanti's use (inclusive of his sham companies and land trust(s)' use) of the void default judgment in order to convey its allegedly clear title and obtain a windfall, violated Tex. Civ. Prac. & Rem. Code § 12.002. Blanchard also violated Section 12.002 through his execution and recording of purported title document transfers that he knew were wrongfully obtained and void. As a result of these actions, Plaintiff is entitled to statutory damages in the amount of $10,000.00 per violation by each of the these defendants, those defendants being DiSanti, Kingman, and Blanchard, plus its attorneys' fees, and exemplary damages to be determined by this Court. Further, Plaintiff is entitled to its actual damages amounting to the payoff of the loan (plus authorized expenses thereunder) resulting from the potential loss of ability to enforce the Deed of Trust against the Property resulting directly from these defendants' deceitful actions.

**D.    Slander of Title.**

38.    In addition based on the foregoing, Plaintiff seeks damages against DiSanti, Kingman, and Blanchard for slander of title. By filing the void default judgment in the official

public records of Tarrant County, Texas, as well as the title transfer documents, these defendants slandered Plaintiff's interest in the Property.  These defendants' representations and statements were false. These defendants caused these statements to be published with legal malice in that they made the false statements regarding title and filed the same within the official public records. The false statements have caused Plaintiff to potentially lose the ability to enforce its Deed of Trust. All of this resulting in slander of title.

39.     These defendants' slander of title has caused injury and damage to Plaintiff's lien interest in an amount to be proven at trial and within the jurisdiction limit of this court. Plaintiff further seeks exemplary damages for the slander of title. In coordinating its scheme to obtain a windfall, these defendants acted with actual malice or a reckless disregard for the truth when publishing the false statements.

**E.      Fraud and Civil Conspiracy – Kingman, DiSanti and Blanchard.**

40.     Plaintiff asserts claims for common law fraud and for civil conspiracy as to Defendants DiSanti, DiSanti's alter ego  Kingman, and Defendant Blanchard. Under Texas law, civil conspiracy requires a showing of: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Murray v. Earle*, 405 F.3d 278, 293 (5th Cir. 2005). A plaintiff must prove either "that the defendants conspired to accomplish an unlawful purpose or used unlawful means to accomplish a lawful purpose." Id.

41.     In this case, the aforementioned defendants (the "Conspirators") conspired to accomplish an unlawful purpose.  More specifically, these defendants knew that the Default Judgment was void as to Plaintiff, then these defendants coordinated together to create a trail of

deed records, purporting to strip Plaintiff's lien from the Property and sell the Property to unsuspecting purchasers for a substantial profit.

42.    The default judgment was wrongfully taken and knowingly so for improper use. Thereafter, the sham appointment and re-appointment of Kingman as trustee for a sham land trust was done to manipulate the legal process in an ethically challenged and improper way, with a subsequent deed from Kingman Holdings to another entity being done to create the appearance in the real property records that title to the Property had changed hands in a legitimate arms-length transaction. These defendants conspired to this above-described scheme after Plaintiff's lien interest was inappropriately declared invalid, so that the final conveyance of the Property to the Lals appeared legitimate and appeared to provide any subsequent purchasers with bona fide purchaser status. In reality, as they have done over a hundred other cases across Texas, these sham transactions were simply part of a profit-sharing agreement and lien-stripping plot against Plaintiff and other mortgage lien holders.

43.    In the process of selling the Property and obtaining a title policy, these defendants concealed any knowledge they had of Plaintiff's valid lien interest in the Property and Plaintiff's attempts to enforce its lien on the Property. Instead these defendants wrongfully stayed silent despite having a duty to speak. Based upon the above actions, these defendants were able to lure the Lals into purchasing the Property, with these defendants (not including the Lals) splitting the profits.

44.    Through the use of the default judgment that was obtained by fraud on the state court, the conspirators then hid their fraud through a series of sham conveyances. The concealment and sale of the property (to supposed bona fide purchasers for value) also constituted fraud on Plaintiff and the Lal Defendants. As shown therein, the conspirators conspired to use the void

Default Judgment, in order to create a trail of conveyances in order to strip Plaintiff's lien from the and sell the Property to unsuspecting purchasers for a substantial profit, which they had agreed to share.

45.    As a result of the actions of the conspirators, and should Plaintiff be unable to enforce its lien due to the conspirators' actions, it has suffered damages resulting from the loss of its ability to enforce that lien interest on the Property, the costs incurred in having to set the default judgment aside; and attorneys' fees incurred in getting the default judgment vacated.  Plaintiff further seeks exemplary damages in an amount determined by this court.

**F.    Fraud in a Real Estate Transaction.**

46.    Plaintiff incorporates by reference all foregoing factual allegations as though they were fully restated herein.

47. All Defendants' actions (except those of the Lals) constituted a concerted continuing effort at improperly selling the Property for the greatest profit by stripping Plaintiff of its lien interest in the Property.  All the events and the actual conveyance to the Lals constitute a transaction involving real estate. During the transaction, DiSanti, Kingman and/or Blanchard each or collectively  falsely represented, and or kept silent when they had a duty to disclose, the fraudulent nature of the default judgment taken against Plaintiff.  Blanchard also participated in the fraudulent flipping of the Properties between the various entities in an effort at creating the appearance of valid unencumbered title in the name of the conveying entity into the Lals. Blanchard also remained silent in selling the Property despite his direct knowledge of the circumstances of title.

48.    In addition, Blanchard failed to disclose DiSanti's scheme of obtaining default judgments and the dozens upon dozens  of instances in which the lenders had subsequently

challenged the validity of those default judgments. He also failed to disclose the substantial risk that Plaintiff would challenge the validity of the Default Judgment and the Lals would have to defend against that challenge. Blanchard, DiSanti and Kingman had a duty to disclose this information.

49.    These defendants intended for the Lals and the title company to rely on these representations and omissions by purchasing the Property, without accounting for these risks. Plaintiff has been injured because it has now been forced to litigate this case against the Lals to protect its interest in the Property.  Moreover, if Plaintiff's lien is unenforceable, Plaintiff will be damaged by the amount of the loss of its note as secured by the Property.

50.    Plaintiff seeks to recover its actual damages (which includes attorneys' fees as damages) as well as exemplary damages pursuant to Tex. Bus. & Com. § 27.01(b)-(c). Plaintiff also seeks to recover its reasonable and necessary attorneys' fees, expert witness fees, and deposition-copy costs pursuant to Tex. Bus. & Com. § 27.01(e).

**G.    Malicious Prosecution.**

51.    Plaintiff incorporates by reference all foregoing factual allegations as though they were fully restated herein. DiSanti's actions, taken through his sham alter ego company of Kingman constitutes malicious prosecution. To prevail in a suit alleging malicious prosecution of a civil claim, the plaintiff must establish: (1) the institution or continuation of civil proceedings against the plaintiff; (2) that such proceedings were by or at the insistence of the defendant; (3) malice in the commencement of the proceedings; (4) lack of probable cause for the proceeding; (5) termination of the proceeding in the plaintiff's favor; and (6) special damages.

52.    DiSanti (inclusive of Kingman and other sham entities of DiSanti) instituted civil proceedings with the intent of defrauding Plaintiff out of its lien interest in the Property.  Given

DiSanti's repeated conduct, the conduct occurring hundreds of times in bringing such lawsuits against mortgagees and the results of those lawsuits being set aside, it is apparent that DiSanti commenced the lawsuit with malice. Further, there was no probable cause for DiSanti to believe or allege that Plaintiff's interest in the Property was invalid. The prior lawsuit, as a result of DiSanti's shameful conduct, was resolved in DiSanti's favor. As a result of the entry of the errant default judgment, Plaintiff has suffered special damages through the impairment of its lien interest in the Property and the cloud on title to the Property.

## F.    SANCTIONS

53.    DiSanti, in connection with Blanchard and others, have continuously and systematically used Texas state and federal courts to obtain default judgments against mortgage lenders and sell properties to third parties, most often through various corporate entities he controls, such as Kingman Holdings. In many cases, DiSanti has obtained default judgments by providing the trial court with false facts in order to mislead the trial court. In other cases, such as this one, he obtained service that is technically valid but is still intentionally designed to avoid the resolution of the merits in an adversarial case (e.g. – serving another entity and then taking a judgement against a mortgagee that was not even involved or named in the prior suit).

54.    This scheme has resulted in clouding dozens of owners' title to their properties, likely more than 100 lawsuits in state and federal courts, and millions in profits to DiSanti. And despite various mortgage lenders being victimized by his scheme, they are unable or unwilling to prevent this scheme from occurring in the future.

55.    The Supreme Court has recognized that federal courts have the inherent power to "fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991). This inherent power "extends to a full range of litigation

abuses." Id. Through this inherent power, "[t]here is no doubt that a court may employ injunctive remedies . . . to protect the integrity of the courts and the orderly and expeditious administration of justice." *Smith v. Scalia*, 44 F. Supp. 3d 28, 46 (D.D.C. 2014) (internal quotations omitted), aff'd, No. 14-5180, 2015 WL 13710107 (D.C. Cir. Jan. 14, 2015).

56.    As sanctions for their conduct, Plaintiff requests an award of all attorneys' fees and costs that it incurs in this litigation. And, to prevent DiSanti, Kingman and Blanchard from continuing to profit from their abuse of the judicial system, Plaintiff asks the Court to impose the following sanctions:

a.    Order that in any lawsuit DiSanti (which includes any entity he owns or controls and any person he is working with in relation to Texas real property) files in Texas state or federal court that seeks to discharge any encumbrance of record from Texas real property, DiSanti must (1) file a copy of the Court's sanction order, (2) must deliver by certified mail return receipt requested the live pleading and a notice of intent to move for default judgment at least 60 days before filing a motion for default judgment to the Texas registered agent and the corporate headquarters of the defendant, as well as any other address specified for notice in the deed of trust and any subsequent assignment of record.

b.    Order that before seeking any default judgment discharging a lien or encumbrance on real property, DiSanti, through his counsel must certify to the Court in writing and orally at any hearing that he has complied with the order referenced above.

c.    Order that in any contemplated sale of real property owned or controlled by DiSanti, Kingman or Blanchard (directly or indirectly), DiSanti, Kingman and Blanchard must deliver a signed notice to any prospective purchaser of any real property in the State of Texas and the title company used in the sale at least 15 days before any conveyance of the Property as to whether any lien or encumbrance was discharged or otherwise removed through a default judgment and if so that there is a substantial risk the holder of such lien or encumbrance may seek to challenge the validity of that default judgment.

d.    Order that any time DiSanti, Kingman or Blanchard, sells any real property (either directly or through any entity or trust they control), they must deposit all proceeds from the sale of the real property into an escrow account controlled by a licensed escrow officer where it shall remain for a period of two years.

e.    Order that within five days of service of any pleading seeking to overturn a default judgment previously rendered in litigation involving the real property sold, DiSanti

must file a notice in the court that notifies the court and the parties of the existence of this escrow account, the escrow officer who controls such account, and the date the two-year period expires.

  f. Order that in any lawsuit involving a challenge to a default judgment to which DiSanti, Kingman or Blanchard is a party and the current owners of the property are not before the court, DiSanti, Kingman and Blanchard shall immediately inform the court and all parties to the litigation in writing of the absence of the current property owners.

57. Plaintiff requests all further sanctions the Court deems appropriate to address DiSanti, Kingman's and Blanchard's abuse of the judicial system.

58. The requested sanctions are directly related to the offensive conduct, directed toward the abuse, and tailored to remedying the prejudice against Plaintiff, other mortgagees and hundreds of other Texas residents, as well as the courts. Most importantly, it will prevent the judicial system from being exploited as a means to perpetrate fraud.

## VI. CONCLUSION

Plaintiff requests that Defendants be cited to appear and answer, and that Plaintiff have judgment against Defendants:

  a. quieting title in Plaintiff in declaring that Plaintiff possesses a valid and superior lien interest in the Property, with the Lal Defendants being subject to foreclosure of Plaintiff's lien interest in the event Plaintiff's associated secured note remains unpaid;

  b. That all Defendants except the Lals be found liable for fraud, fraud in a real estate transaction, Tex. Civ. Prac. & Rem. Code Ch. 12 violations, slander of title, trespass to title, and malicious prosecution for which Plaintiff is entitled to actual damages, exemplary damages and attorney's fees;

  c. Attorneys' fees and costs of suit;

  d. Sanctions against all Defendants except the Lal Defendants as enumerated herein; and

  e. Such other and further relief, in law and in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

By:     /s/ *Shelley L. Hopkins*       
            Shelley L. Hopkins
            State Bar No. 24036497
            BARRETT DAFFIN FRAPPIER
            TURNER & ENGEL, LLP - *Of Counsel*
            3 Lakeway Centre Ct., Suite 110
            Austin, Texas 78734
            (512) 600-4320
            ShelleyH@bdfgroup.com
            shelley@hopkinslawtexas.com

            Robert D. Forster, II
            State Bar No. 24048470
            BARRETT DAFFIN FRAPPIER
            TURNER & ENGEL, LLP
            4004 Belt Line Road, Ste. 100
            Addison, Texas 75001
            (972) 386-5040
            RobertFO@bdfgroup.com

            Mark D. Hopkins
            State Bar No. 00793975
            HOPKINS LAW, PLLC
            3 Lakeway Centre Ct., Suite 110
            Austin, Texas 78734
            (512) 600-4320
            mark@hopkinslawtexas.com

            **ATTORNEYS FOR PLAINTIFF**