IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **U.S. BANK TRUST NATIONAL ASSOCIATION,**  §§§§§<br><br>Plaintiff,  §§§<br><br>v.  §§§<br><br>**KINGMAN HOLDINGS LLC,** *et al.***,**  §§§<br><br>Defendants.  §§ | Civil Action No. 4:23-cv-597-ALM-KPJ |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendant Kingman Holdings, LLC's, individually and as Trustee for the Love Bird 218 Land Trust ("Kingman Holdings") Motion to Dismiss or Abate (the "Motion to Dismiss") (Dkt. 8), to which Defendants Yasir Lal and Mahwish Lal (the "Lal Defendants") have joined. In response to the Motion to Dismiss (Dkt. 8), Plaintiff U.S. Bank Trust National Association ("U.S. Bank"), as Trustee for RASC 2006-EMX5, filed a response (the "Response") (Dkt. 11), and Kingman Holdings filed a reply (the "Reply") (Dkt. 12). For the reasons that follow, the Court recommends that the Motion to Dismiss (Dkt. 8) be **DENIED**.

**I.   BACKGROUND**

On June 26, 2023, U.S. Bank initiated this lawsuit by filing the Original Complaint (the "Complaint") (Dkt. 1) against Kingman Holdings, the Lal Defendants, and Defendants Mark DiSanti ("DiSanti") and Ted Blanchard ("Blanchard"). Dkt. 1 at 1. In the Complaint (Dkt. 1), U.S. Bank alleges that, on March 31, 2006, Boutang Vongprachanh and Sinakhone Vongprachanh (the "Original Owners") "obtained a home loan in the amount of $184,000.00" to finance the purchase of real property located at "218 Love Bird Lane, Murphy, Texas 75094" (the "Property"). *Id.* at 3–

1

4. The loan was secured by a deed of trust in favor of Mortgage Lenders Network, USA, Inc. ("Mortgage Lenders"). *Id.* at 4. On May 9, 2011, Mortgage Lenders assigned the deed of trust to U.S. Bank. *Id.* According to U.S. Bank, the Property was also subject to a junior "assessment lien securing the homeowner's obligation to pay homeowner's association dues." *Id.* However, the Original Owners failed to pay "certain . . . assessments" to the homeowner's association and, on April 3, 2018, the Property was sold at a foreclosure sale to Kingman Holdings for $13,900.00. *Id.*

U.S. Bank alleges that DiSanti, the sole member of Kingman Holdings, "utilizes an ethically challenged business plan" to purchase homes at "homeowners' association foreclosure sales" at a steep discount by purchasing properties subject to a superior lien. *See id.* at 3–4. Once purchased, U.S. Bank alleges that DiSanti sues the superior lienholder "in the name of a trust or corporate entity he controls," like Kingman Holdings, and executes defective service on the lienholder "to obtain a default judgment discharging [the] superior mortgage lien." *Id.* at 5. With the superior lien ostensibly discharged, "DiSanti . . . proceeds to sell the property to unwitting individuals for fair market value." *Id.* Eventually, the lienholder "becomes aware of the defective default judgment and files a lawsuit seeking to unwind DiSanti's deceitful conduct." *Id.*

U.S. Bank further alleges that "DiSanti has been engaging in this scheme . . . since 2009" and, as a result, "title companies refused to insure title to the properties DiSanti was associated with." *Id.* "To conceal his association from these transactions, DiSanti started purchasing properties in the name of various corporate entities he would set up," such as Kingman Holdings. *Id.* at 5–6. U.S. Bank alleges that the title companies discovered this scheme, too, forcing DiSanti to use land trusts to "obscure his ownership." *Id.* at 6. In addition, DiSanti allegedly uses "strawmen," such as Blanchard, "to further conceal the nature of his scheme." *Id.* According to U.S. Bank, Blanchard "is aware of DiSanti's business scheme(s) and frequently assists DiSanti in

flipping title to property through various entities, and also assists DiSanti in marketing property for sale to unwitting third parties." *Id.*

In the present case, U.S. Bank alleges that Kingman Holdings, operating under the control of DiSanti, "purchased the Property at [a homeowners association] sale on behalf of a purported land trust." *Id.* Recognizing that the senior lienholder, U.S. Bank, was an Ohio company, DiSanti replaced the Property's trustee, Kingman Holdings, with Ohio Gravy Biscuit ("Gravy Biscuit"), an Ohio company, thereby "destroying diversity of citizenship and preventing [U.S. Bank] from litigating over the Property in federal court." *See id.*

U.S. Bank further alleges that DiSanti, "acting through . . . Gravy Biscuit as his alter ego," filed suit in state court and obtained a default judgment purportedly discharging the first and second position liens on the Property. *See id.* at 7. The lawsuit named U.S. Bank as the holder of the second position lien but did not name U.S. Bank as the holder of the first position lien. *See id.* According to U.S. Bank, discharging its first position lien "without notice or service" is violative of "the most rudimentary demands of due process of law." *Id.* (internal quotation marks omitted). As U.S. Bank "was not joined in the suit," it contends that it may "collaterally attack the judgment to protect its interest in the property." *Id.* at 8 (emphasis omitted).

In addition, U.S. Bank alleges that "Blanchard assisted in the transfer of title by executing, and having recorded, title documents purportedly conveying the Property through sham entities." *Id.* Blanchard was also "involved in the marketing and sale of the Property to [the Lal Defendants], concealing facts from [them] and the title company that Blanchard should have disclosed." *Id.*

Based on the foregoing allegations, U.S. Bank asserts a quiet title claim against the Lal Defendants. *See id.* at 8–9. According to U.S. Bank, the default judgment is invalid and, thus, its lien is "superior to the [Lal Defendants'] interest in the [Property] obtained through the foreclosure

of a junior lien." *Id.* at 9. U.S. Bank further seeks a declaratory judgment memorializing the superiority of its lien. *See id.* at 10. To that end, U.S. Bank argues that Kingman Holdings attempted to transfer the Property as trustee of a land trust. *Id.* "However, a land trust cannot exist without a written instrument creating it." *Id.* As there is no instrument creating a land trust, "the conveyances into or out of such a sham entity must be declared void." *Id.* U.S. Bank alternatively seeks a declaration that Kingman Holdings, and those taking title therefrom, have taken title subject to U.S. Bank's superior lien. *Id.*

U.S. Bank further asserts a cause of action arising under Section 12.002 of the Texas Civil Practice and Remedies Code against Kingman Holdings, DiSanti, and Blanchard. *Id.* According to U.S. Bank, Kingman Holdings, acting under the control of DiSanti, obtained and recorded a default judgment it knew to be void. *See id.* at 11. Likewise, U.S. Bank contends that Blanchard executed and recorded transfers "that he knew were wrongfully obtained and void." *Id.* U.S. Bank also brings a slander of title claim against Kingman Holdings, DiSanti, and Blanchard, contending that, "[b]y filing the void default judgment in the official public records . . . , as well as the title transfer documents, [they] slandered [U.S. Bank's] interest in the Property." *Id.* at 11–12.

In addition, U.S. Bank asserts a claim of fraud and civil conspiracy against Kingman Holdings, DiSanti, and Blanchard, arguing that each knew that the default judgment was void but decided to coordinate "to create a trail of deed records, purporting to strip [U.S. Bank's] lien from the Property and sell the Property to unsuspecting purchasers for a substantial profit." *Id.* at 12–13. U.S. Bank also alleges a fraud claim against Kingman Holdings, DiSanti, and Blanchard, contending they made false representations and remained silent when they had a duty to speak regarding the "fraudulent nature of the default judgment taken against [U.S. Bank]." *Id.* at 14. U.S. Bank further asserts a malicious prosecution cause of action against Kingman Holdings and

DiSanti, arguing that they "instituted civil proceedings with the intent of defrauding [U.S. Bank] out of its lien interest in the Property." *Id.* at 15. Finally, U.S. Bank asks the Court to use its inherent power to impose sanctions on Kingman Holdings, DiSanti, and Blanchard for their "abuse of the judicial system." *See id.* at 16–17.

## II. LEGAL ANALYSIS

### A. Motion to Dismiss

#### 1. Improper Joinder

In the Motion to Dismiss (Dkt. 8), Kingman Holdings argues that U.S. Bank has "wrongfully" and "perhaps fraudulently" named Kingman Holdings—"a party with no connection to the transactions"—in an attempt to preserve diversity jurisdiction. Dkt. 8 at 5. According to Kingman Holdings, the correct entity is Gravy Biscuit, the perpetrator of the allegedly wrongful conduct—not Kingman Holdings. *See id.* at 5–7. Kingman Holdings further contends that U.S. Bank is aware that Gravy Biscuit is the correct party in this action.[1] In the Response (Dkt. 11), U.S. Bank argues that improper joinder "prohibits the *inclusion* of litigants to invoke or destroy federal jurisdiction, not the *exclusion* of litigants." Dkt. 11 at 4 (emphasis in original). As the "plaintiff is the master of [its] complaint," U.S. Bank concludes that it is "free to sue (or not sue) whomever it wishes." *Id.* at 5 (alteration in original); *see id.* ("It has long been the rule that it is

---

[1] In 2018, Gravy Biscuit sued U.S. Bank in state court to quiet title to the Property. U.S. Bank removed the case to federal court, arguing DiSanti improperly joined Gravy Biscuit in an effort to destroy diversity jurisdiction. *See* Notice of Removal, *Ohio Gravy Biscuit v. U.S. Bank, Nat'l Ass'n*, No. 18-cv-480 (E.D. Tex. July 9, 2018), Dkt. 1 at 4–7. According to Kingman Holdings, "[t]his argument was rejected by the [c]ourt[,] and the case was remanded." Dkt. 8 at 5–6. Thus, Kingman Holdings contends that U.S. Bank was put "on notice" that the proper party is Gravy Biscuit. *See id.* at 6. Kingman Holdings misrepresents the facts of the prior proceeding.

The earlier case was remanded because "the state court action was not timely removed"—not because the court rejected U.S. Bank's improper joinder argument. *See Ohio Gravy Biscuit, Inc. v. U.S. Bank, Nat'l Ass'n*, No. 18-cv-480, 2018 WL 6424785, at *4 (E.D. Tex. Oct. 26, 2018), *R. & R. adopted*, 2018 WL 6424698 (E.D. Tex. Dec. 5, 2018). In fact, the court expressly declined to "address whether complete diversity exist[ed] between the parties." *Id.*

not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." (internal quotation marks omitted)). The Court agrees with U.S. Bank.

A federal court has diversity "jurisdiction of all civil actions where the matter in controversy exceeds . . . $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a). Improper joinder exists when the plaintiff attempts to thwart diversity jurisdiction by improperly joining a non-diverse defendant. *See Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (quoting *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)). Likewise, a federal court is "prohibited by statute from exercising jurisdiction over a suit in which any party, by assignment or otherwise, has been improperly or collusively joined to manufacture federal diversity jurisdiction." *Id.* at 572 (emphasis omitted) (citing 28 U.S.C. § 1359). Both prohibitions require the *joinder* of a party for the purpose of either defeating or manufacturing diversity jurisdiction. There is no equivalent doctrine of "fraudulent non-joinder." *See, e.g.*, *Roberts v. Mars Petcare US*, 874 F.3d 953, 958 (6th Cir. 2017) ("[The defendant] in essence seeks to create a new fraudulent *non-joinder* doctrine. But we have no authority to do so." (emphasis in original)).

In the present case, Kingman Holdings argues that U.S. Bank should have joined Gravy Biscuit but decided not to do so for the purpose of preserving diversity jurisdiction. *See* Dkt. 8 at 5–6. Nothing about this practice vitiates the existence of subject matter jurisdiction. Nor does Kingman Holdings cite any authority supporting such a conclusion. Thus, to the extent the Motion to Dismiss (Dkt. 8) seeks dismissal on the grounds of improper joinder, it should be denied.

### 2. Required Party

In the Motion to Dismiss (Dkt. 8), Kingman Holdings does not argue that Gravy Biscuit is a required party. *See* Dkt. 8. In the Response (Dkt. 11), however, U.S. Bank raises this issue, *see*

Dkt. 11 at 4–5, and in the Reply (Dkt. 12), Kingman Holdings argues for the first time that Gravy Biscuit is an indispensable party. *See* Dkt. 12 at 2. Specifically, Kingman Holdings contends that, because U.S. Bank is attacking a judgment, all parties to that underlying action, including Gravy Biscuit, are indispensable. *See id.* The Court declines to consider this argument.

Under Local Rule CV-7, every motion "must be filed as a separate document." LOC. R. CV-7(a). If Kingman Holdings wishes to move for dismissal on the basis that U.S. Bank failed to join a required party, it is free to file a separate motion seeking such relief. *See* FED. R. CIV. P. 12(b)(7) (creating a motion to dismiss for "failure to join a party"). Furthermore, even if the Court was to consider this argument, Kingman Holdings fails to meet its burden.

Rule 19 of the Federal Rules of Civil Procedure provides that a party is required if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

    (i) as a practical matter impair or impede the person's ability to protect the interest; or

    (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1). If there is a required party, that party must be joined unless "such joinder would destroy the court's jurisdiction," in which case the court must determine "whether to press forward without the person or to dismiss the litigation." *HS Res., Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 2003) (citations omitted). The burden is on the moving party to demonstrate the existence of a required party. *See Sanson v. Allstate Tex. Lloyds*, No. 17-cv-733, 2018 WL 3630136, at *1 (E.D. Tex. July 31, 2018) (citing *Payan v. Cont'l Tire N. Am., Inc.*, 232 F.R.D. 587, 589 (S.D. Tex. 2005)).

Kingman Holdings—the moving party—makes no argument directed at the elements necessary to prove Gravy Biscuit is a required party. *See* Dkt. 12. Instead, it points only to Texas law. *See id.* at 2. "In a diversity case like this one, the issue of joinder is governed by federal law." *PHH Mortg. Corp. v. Old Republic Nat'l Title Ins. Co.*, 80 F.4th 555, 560 (5th Cir. 2023) (citing *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 125 n.22 (1968)). Thus, this argument is without merit. For this reason, as well as the procedural deficiencies identified above, the Motion to Dismiss (Dkt. 8) should be denied to the extent that it seeks dismissal for failure to join a required party.

### 3.     Abstention[2]

In the Motion to Dismiss (Dkt. 8), Kingman Holdings contends that U.S. Bank has a "virtually identical" case pending in state court against Gravy Biscuit and, therefore, the Court should decline to hear the present case under principles of abstention. *See* Dkt. 8 at 3, 7; *see also* Dkt. 8-4 (state court petition). In the Response (Dkt. 11), U.S. Bank argues that when the Property was sold to the Lal Defendants, it dismissed its case against Gravy Biscuit. Dkt. 11 at 7. Due to that dismissal, U.S. Bank contends that "there is no state court proceeding" whatsoever. *Id.* at 8. Even if there was a state court proceeding, U.S. Bank argues that for a proceeding to be parallel, it "must involve the same issues and the same parties." *Id.* As the state court action only involved Gravy Biscuit, not Kingman Holdings, DiSanti, Blanchard, or the Lal Defendants, U.S. Bank concludes that "[t]here simply is no parallel proceeding, of any kind, pending in state court between the litigants in this lawsuit." *Id.* In the Reply (Dkt. 12), Kingman Holdings abandons its

---

[2] The Court construes the Motion to Dismiss (Dkt. 8) as seeking abstention under *Colorado River* rather than *Brillhart* because U.S. Bank seeks "coercive relief in addition to [a] declaratory judgment." *Allstate Life Ins. Co. v. Rapid Settlements Ltd.*, 328 F. App'x 289, 281 (5th Cir. 2009) (citing *Southwind Aviation, Inc. v. Bergen Aviation, Inc.*, 23 F.3d 948, 951 (5th Cir. 1994)); *see New England Ins. Co. v. Barnett*, 561 F.3d 392, 396 (5th Cir. 2009) ("[I]t is well settled in this circuit that a declaratory action that also seeks coercive relief is analyzed under the *Colorado River* standard.").

abstention argument and does not dispute that U.S. Bank dismissed its case against Gravy Biscuit. *See* Dkt. 12. The Court agrees with U.S. Bank.

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given to them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–18 (1976) (collecting cases). However, under *Colorado River*, "a federal court may stay an action pending disposition of a state court action when the state and federal actions are 'parallel'" and justified by "exceptional circumstances." *Afr. Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 797 (5th Cir. 2014) (citations omitted). Generally, "parallel actions" are those "involving the same parties and the same issues." *Id.* (quoting *Exxon Corp. v. St. Paul Fire and Marine Ins. Co.*, 129 F.3d 781, 785 (5th Cir. 1997)) (internal quotation marks omitted).

Abstention is not warranted in the present case because there is no pending parallel proceeding—a threshold requirement. *See, e.g.*, *King's Grant Inn v. Town of Gilford*, No. 03-249, 2003 WL 22455489, at *1 (D.N.H. Oct. 29, 2003) ("*Colorado River* . . . does not apply on the facts of this case because there is now no pending state-court action in favor of which this court should abstain. It appears that plaintiff requested, and was allowed, a voluntary non-suit without prejudice . . . ."); *Blach v. AFLAC, Inc.*, No. 15-mc-5, 2016 WL 676430, at *8 n.6 (M.D. Ga. Feb. 18, 2016) (recognizing that the voluntary dismissal of a state court action precludes application of *Colorado River*). It appears that U.S. Bank nonsuited its state court case and, thereby, eliminated the risk of a pending parallel proceeding. *See* Dkt. 11 at 8 ("U.S. Bank dismissed the state court action immediately prior to the filing of this Response . . . ."). Kingman Holdings tacitly admits as much by abandoning its abstention argument in the Reply (Dkt. 12). *See* Dkt. 12. Therefore, the Motion to Dismiss (Dkt. 8) should be denied to the extent that it seeks dismissal based on abstention.

9

### 4. *Rooker-Feldman* Doctrine

In the Motion to Dismiss (Dkt. 8), Kingman Holdings does not argue that U.S. Bank's claims are barred by the *Rooker-Feldman* doctrine. *See* Dkt. 8. Instead, Kingman Holdings raises this issue for the first time in the Reply (Dkt. 12). In total, Kingman Holdings states:

> Attention is called to the "Rooker/Feldman" Doctrine. "Absent specific law otherwise providing, that doctrine directs that federal district courts lack jurisdiction to entertain collateral attacks on state court judgments."

Dkt. 12 at 3. This is not an argument; likewise, Kingman Holdings fails to adequately raise and brief this issue, depriving U.S. Bank of the opportunity to meaningfully respond. Thus, to the extent the Motion to Dismiss (Dkt. 8) intends to raise this issue, it should be denied.

## III. RECOMMENDATION

For the foregoing reasons, the Court recommends the Motion to Dismiss (Dkt. 8) be **DENIED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party filing objections is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *see also Douglass v. United Servs. Auto*

*Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

**So ORDERED and SIGNED this 18th day of January, 2024.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE