## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| U.S. BANK TRUST NATIONAL ASSOCIATION *as Trustee for RASC 2006-EMX5* | §<br>§<br>§<br>§ | |
| v. | § | NO. 4:23-CV-00597-ALM-BD |
| | § | |
| KINGMAN HOLDINGS, LLC *et al.* | § | |

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

In this diversity case, U.S. Bank Trust National Association, in its capacity as Trustee for RASC 2006-EMX5, a lienholder-trust, sued Kingman Holdings, LLC both individually and as Trustee for the Love Bird 218 Land Trust; Mark DiSanti; Ted Blanchard; and Yasir and Mahwish Lal. Dkt. 1. U.S. Bank alleges that Kingman Holdings, DiSanti, and Blanchard engaged in a fraudulent scheme to deprive it of its lien on a property that was later sold to the Lals. *Id.* UIF Corporation, the Lals' mortgage lender, intervened. Dkt. 26. DiSanti and Kingman Holdings each moved to dismiss. Dkts. 17, 25. The court will recommend that the motions be granted in part and denied in part.

### BACKGROUND

#### I. Factual Background

According to the complaint, two people not involved in this litigation bought a house at 218 Love Bird Lane in Murphy, Texas, taking out a $184,000 mortgage loan. The loan was secured by a deed of trust. In 2011, the lender assigned the deed to U.S. Bank as trustee for RASC 2006-EMX5. The house was also subject to an assessment lien owned by the homeowners' association.

In 2018, the owners of the house failed to pay assessments to the homeowners' association, and the association foreclosed on its subordinate lien. Kingman Holdings, purportedly on behalf of a land trust, bought the house, subject to two liens owned by U.S. Bank trusts, for $13,900 at the

foreclosure sale. Acting through Kingman Holdings, DiSanti then installed a new trustee, Ohio Gravy Biscuit, an Ohio-based business entity.

Ohio Gravy Biscuit sued U.S. Bank as trustee for RASC 2006 EMX6, a different trust not involved in this case, in a state court. No. 366-02457-2022 (366th Dist. Ct., Collin County, Tex.). That trust held a lien to secure a second mortgage on the house. U.S. Bank alleges that it was not served in that lawsuit as trustee for RASC 2006 EMX*5*, the trust that U.S. Bank represents in this case, which allegedly holds the lien for the primary mortgage. Ohio Gravy Biscuit obtained a default judgment that purportedly discharged both liens against the property, which were held by two different trusts, despite the failure to serve U.S. Bank as trustee for one of the lienholder-trusts.

Blanchard then allegedly executed and recorded deeds transferring title to the house through various business entities. He also marketed the house to the Lals without disclosing the default judgment or U.S. Bank's lien.

The Lals bought the house. The parties now dispute whether they took title to it subject to U.S. Bank's lien.

DiSanti and Kingman Holdings are no strangers to this type of case. U.S. Bank cites two other cases involving them and similar property disputes. *Kingman Holdings, L.L.C. v. Bank of Am., N.A.*, No. 4:11-CV-33, 2011 WL 4431970 (E.D. Tex. Sept. 22, 2011); *Kingman Holdings, LLC v. Mortg. Elec. Registration Sys., Inc.*, No. 05-15-01353-CV, 2016 WL 8115937 (Tex. App.—Dallas 2016, no pet.). There are many more. *See, e.g., Kingman Holdings, LLC v. U.S. Bank Nat'l Ass'n*, No. 4:15-CV-588, 2016 WL 1756508 (E.D. Tex. May 3, 2016), *report and recommendation adopted*, No. 4:15-CV-588, 2016 WL 3079812 (E.D. Tex. June 1, 2016) (vacating a default judgment against U.S. Bank after DiSanti/Kingman Holdings failed to adequately serve it in the state-court proceeding); *DiSanti v. U.S. Bank Nat'l Ass'n*, No. 4:13-CV-680, 2014 WL 11515653 (E.D. Tex. Oct. 2, 2014) (granting summary judgment against DiSanti after he bought a property at a homeowners' association foreclosure sale and sued to extinguish U.S. Bank's superior lien); *DiSanti v. Mortg. Elec. Registration Sys., Inc.*, No. 4:10-CV-103, 2010 WL 3338633 (E.D. Tex. Aug. 24, 2010) (dismissing DiSanti's claims against a mortgagee after DiSanti bought property at a homeowners'

association foreclosure sale and sued the mortgagee to quiet title); *Mortg. Elec. Registration Sys., Inc. v. DiSanti*, No. 02-10-00169-CV, 2011 WL 255815 (Tex. App.—Fort Worth 2011, no pet.) (vacating a default judgment against a former lienholder after DiSanti sued it, rather than the current lienholder, to extinguish a superior lien); *Disanti v. Wachovia Bank, NA*, No. 2-08-330-CV, 2009 WL 1372970 (Tex. App.—Fort Worth 2009, no pet.) (affirming a summary judgment construing a superior lien against DiSanti after he bought a property at a homeowners' association foreclosure sale).

Although U.S. Bank brought this case in federal court, it knows it could seek relief against DiSanti and Kingman Holdings in state court. For example, U.S. Bank recognizes the availability of a bill of review or a collateral attack to challenge the default judgment it says is void. Dkts. 1 at 7–8, 18 at 3–4. It concedes that it could, by one or both of those methods, challenge the default judgment in state court for lack of due process or based on the plaintiff's lack of standing. *Id.* It has also already sued Ohio Gravy Biscuit in state court. *See* Dkt. 11 at 3. This federal-court report and recommendation, of course, indicates nothing about the viability of those potential state-court remedies.

## II. Procedural Background

U.S. Bank alleges seven claims: (1) quiet title against the Lals; (2) declaratory judgment that two conveyances of the property are void, or alternatively that any subsequent buyers took title subject to U.S. Bank's lien; (3) violation of Texas Civil Practice and Remedies Code § 12.002 by Kingman Holdings and DiSanti; (4) slander of title against DiSanti, Blanchard, and Kingman Holdings; (5) fraud and civil conspiracy against DiSanti, Blanchard, and Kingman Holdings; (6) fraud in a real-estate transaction against DiSanti, Blanchard, and Kingman Holdings; and (7) malicious prosecution against DiSanti and Kingman Holdings. It also seeks sanctions.

Kingman Holdings filed a motion to dismiss for lack of jurisdiction, Dkt. 8, which was denied, Dkt. 20. DiSanti then filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 17. DiSanti and Kingman Holdings later filed a joint motion to dismiss on the same grounds. Dkt. 25. Because the two Rule 12(b)(6) motions address the same

claims, this report and recommendation addresses them both. The Lals and Blanchard did not join the motions, but to the extent that the motions address claims against them, the court's ruling will inure to their benefit. *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001).

## LAW

Rule 12(b)(6) motions "are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). In considering such a motion, the court must first identify and exclude legal conclusions in the complaint that "are not entitled to the assumption of truth," then consider the remaining "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must accept as true all well-pleaded facts and view them in the light most favorable to the plaintiff. *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020). The complaint will survive the motion to dismiss if it alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering the motion, the court may not look beyond the pleadings and any attachments to them. *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (quotation marks omitted).

Rule 9(b) applies a heightened pleading standard for allegations of fraud by requiring the plaintiff to "state with particularity the circumstances constituting the fraud." A party alleging fraud must lay out the "who, what, when, where, and how" of the alleged fraud. *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010).

## DISCUSSION

### I.  Multiple Rule 12(b) Motions

U.S. Bank urges the court to deny the second, joint motion to dismiss because Rule 12(g)(2) generally prohibits duplicative dismissal motions and each party joining the second motion previously filed a motion to dismiss. But that rule does not apply in this circumstance.

Rule 12(b) permits defendants to raise certain defenses in motions to dismiss instead of responsive pleadings. Any such motion must be filed before a responsive pleading is filed. Fed. R. Civ. P. 12(b). If the court denies the Rule 12 motion, the defendant must file its answer within 14 days of notice of the court's action. *Id.* R. 12(a)(4)(A).

In the main, Rule 12(g)(2) prevents a party from filing a second motion to dismiss "raising a defense or objection that was available to the party but omitted from its earlier motion." According to U.S. Bank, DiSanti's first motion to dismiss "sought the same identical Rule 12(b)(6) relief that DiSanti seeks in his second motion," Dkt. 30 at 2–3, and the second motion is "nothing more than a re-hash of his first" motion, *id.* at 4. Because U.S. Bank concedes that the two motions raise the same defenses, the second motion does not raise anything that was "omitted from [DiSanti's] earlier motion," so the rule does not apply. Fed. R. Civ. P. 12(g)(2); *see Luminati Networks Ltd. v. BIScience Inc.*, No. 2:18-CV-00483-JRG, 2019 WL 2084426, at *3 (E.D. Tex. May 13, 2019) (declining to strike a second motion to dismiss because the party moving to strike it failed to identify any arguments that were available but not asserted in the first motion to dismiss).

Even though Rule 12(g)(2) does not bar DiSanti from joining the second motion to dismiss, it would ordinarily bar Kingman Holdings from filing that motion. Kingman Holdings already filed and received a ruling on a Rule 12 motion that did not raise the arguments presented in the joint motion. Dkts. 8, 22. But even if Kingman Holdings had not joined the second motion, it could benefit from the arguments raised there. *See Lewis*, 236 F.3d at 768. The court will consider DiSanti's motion and the joint motion together because doing so promotes judicial efficiency and does not prejudice the plaintiff. *See Tornado Bus Co. v. Bus & Coach Am. Corp.*, No. 3:14-CV-3231-M, 2015 WL 5164731, at *5 (N.D. Tex. Sept. 2, 2015); *Flaherty & Crumrine Preferred Income Fund Inc. v. TXU Corp.*, No. CIV.A.3:05-CV-1784-G, 2008 WL 918339, at *9 (N.D. Tex. Apr. 4, 2008), *aff'd*, 565 F.3d 200 (5th Cir. 2009); *Stoffels ex rel. SBC Concession Plan v. SBC Commc'ns, Inc.*, 430 F. Supp. 2d 642, 648 (W.D. Tex. 2006).

## II. Declaratory Judgment

The complaint asks the court to declare two deeds—the first transferring title in the property from Kingman Holdings to 218LOVEBIRDLANE, Inc., the second conveying title to the Lals—void. Dkt. 1 at 9–10. The deeds and the conveyances they reflect are void, in U.S. Bank's view, because Kingman Holdings purported to act as a trustee when, in fact, no trust existed. *Id.* at 10. U.S. Bank alternatively asks for a declaration that Kingman Holdings and any entity that took title to the property after Kingman Holdings bought it did so subject to U.S. Bank's superior lien. *Id.*

The motions to dismiss argue that U.S. Bank lacks standing to challenge the deeds because it was not a party to the conveyances. Dkt. 17 at 2; Dkt. 25 at 5. They also argue that the contested transfers just substituted trustees, leaving title with the trust. *Id.*

In reply, U.S. Bank argues that it has standing to collaterally attack the underlying state-court judgment that allowed Kingman to execute the allegedly void deed. Dkt. 18 at 3–4. U.S. Bank contends that the conveyances from Kingman to 218LOVEBIRDLANE, Inc., and from 218LOVEBIRDLANE, Inc., to the Lals are void because Kingman purported to act as trustee without a written trust instrument.

The defendants are right about U.S. Bank's lack of standing to challenge the deeds. But the bank's alternative request for a declaration that anyone who has taken title to the property has done so subject to its superior lien survives the motions to dismiss.

### A. U.S. Bank's lack of standing to challenge the deeds' validity

Under Texas law, a trust holding real property "is enforceable only if there is written evidence of the trust's terms bearing the signature of the settlor or the settlor's authorized agent." Tex. Prop. Code § 112.004. A void act is "entirely null, not binding on either party, and not susceptible of ratification." *Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542, 547 (Tex. 2016). But an act may also be only voidable, such that it "is obligatory upon others until disaffirmed by the party with whom it originated and which may be subsequently ratified or confirmed." *Id.* U.S. Bank cites no law, and the court is aware of none, clarifying whether the absence of a trust instrument renders the purported trustee's conveyance void or only voidable.

6

U.S. Bank, however, characterizes DiSanti's and Kingman Holdings's conduct as fraudulent. "Deeds procured by fraud are voidable only, not void, at the election of the grantor." *Nobles v. Marcus*, 533 S.W.2d 923, 926 (Tex. 1976); *accord Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007). That rule addresses the more common situation in which the grantee defrauds the grantor. U.S. Bank alleges the opposite: that the grantor, 218LOVEBIRDLANE, Inc., defrauded the grantees, the Lals. "It is settled that such a deed is valid and represents prima facie evidence of title until there has been a successful suit to set it aside." *Nobles*, 533 S.W.2d at 926. But "[a] suit to set aside a deed obtained by fraud can only be maintained by the defrauded party." *Lance v. Robinson*, 543 S.W.3d 723, 740 (Tex. 2018). Everyone else lacks standing because "only the person whose primary legal right has been breached may seek redress for an injury." *Id.*

Whether the deeds are void or voidable because they were effected by an unauthorized trustee or are voidable because they were procured by fraud, U.S. Bank lacks standing to challenge them. If U.S. Bank retained a lien on the property, the subsequent deeds cannot affect its right to the property, as "a deed can pass no greater estate than that owned by the grantor." *Cockrell v. Tex. Gulf Sulphur Co.*, 299 S.W.2d 672, 675 (Tex. 1956). So for purposes of Article III standing, U.S. Bank lacks an injury in fact with respect to this claim, *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992), because its liens are unaffected by the validity or invalidity of the deeds.

## B.  U.S. Bank's alternative request for a determination of the validity and superiority of its lien

Ordinarily, an action for trespass to try title is the method to determine title to real property in Texas. Tex. Prop. Code. § 22.001; *Rogers v. Ricane Enters., Inc.*, 884 S.W.2d 763, 768 (Tex. 1994). But a declaratory-judgment action, such as the one that U.S. Bank brought under the Texas Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code § 37.001–.011, is the appropriate vehicle to determine the validity of a lien, *Khera Int. Inc. v. Wilmington Tr. Nat'l Ass'n*, No. 14-21-00404-CV, 2023 WL 2808170, at *5 (Tex. App.—Houston [14th Dist.] Apr. 6, 2023, no pet.); *DTND Sierra Inv., LLC v. HSBC Bank USA, Nat'l Ass'n*, No. 04-15-00657-CV, 2016 WL 3342327, at *2 (Tex. App.—San Antonio June 15, 2016, pet. denied); *Chase Home Fin., L.L.C. v. Cal W.*

7

*Reconveyance Corp.*, 309 S.W.3d 619, 633 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *see also Cadle Co. v. Ortiz*, 227 S.W.3d 831, 838 (Tex. App.—Corpus Christi 2007, pet. denied) (finding that a case concerning the validity of a mechanic's lien should not be considered a case concerning a cloud on title, even though the suit necessarily implicated title). And the Texas Supreme Court has concluded that a declaratory-judgment action, not a suit for trespass to try title, is the appropriate vehicle when a third party seeks to invalidate a deed. *Lance*, 543 S.W.3d at 740.

The motions to dismiss do not address U.S. Bank's alternative request for declaratory judgment. To the extent that U.S. Bank seeks a declaration regarding the validity and priority of its lien, that claim should not be dismissed at this stage.

## III. Slander of Title

The complaint alleges that DiSanti, Blanchard, and Kingman Holdings slandered U.S. Bank's title by recording the allegedly void default judgment in the public records of Tarrant County. Dkt. 1 at 11–12. It further alleges that the defendants acted with malice in causing false statements to be published in official records and that U.S. Bank suffered harm because it potentially lost the ability to enforce its deed. *Id.* at 12.

The defendants argue that the claim for slander of title must fail because the documents were recorded in Collin County, not Tarrant County, and that U.S. Bank fails to allege facts that would satisfy the required elements of the claim, including that it lost a sale due to the alleged false publication. Dkts. 17 at 2–3, 25 at 6; *see* Dkt. 18 at 6 (U.S. Bank's request for leave to correct the complaint's erroneous identification of the county in which the judgment was recorded).

The defendants have the better argument.

Under Texas law, slander of title is a "false and malicious statement made in disparagement of a person's title to property which causes special damages." *Allen-Pieroni v. Pieroni*, 535 S.W.3d 887, 887 (Tex. 2017). Special damages exist when the plaintiff can show the loss of a specific, pending sale that was frustrated by the slander. *A.H. Belo Corp. v. Sanders*, 632 S.W.2d 145, 145–46 (Tex. 1982). A plaintiff claiming slander of title must therefore "allege the loss of a specific sale." *Ellis v. Waldrop*, 656 S.W.2d 902, 904–05 (Tex. 1983).

Here, the complaint alleges that U.S. Bank "potentially los[t] the ability to enforce its Deed of Trust." Dkt. 1 at 12. And in response to the first motion to dismiss, U.S. Bank clarified that the lost sale was its own foreclosure sale to enforce the deed. Dkt. 18 at 6. But U.S. Bank does not allege that it attempted to enforce its deed through a foreclosure sale and was frustrated by the slander; instead, it alleges only a "potentially" lost sale. Dkt. 1 at 12. Because U.S. Bank fails to allege the loss of a specific, pending sale, its claim for slander of title should be dismissed.

### IV. Texas Civil Practice and Remedies Code Chapter 12

The complaint alleges that DiSanti, Blanchard, and Kingman Holdings violated Texas Civil Practice and Remedies Code § 12.002 by recording the void judgment and sham conveyances with the intent to trick title insurers into issuing policies for the Lals. The defendants argue that recording the judgment could not be fraudulent because the judgment was signed by a judge. They argue that the judgment was not void because U.S. Bank not only had actual notice of the suit but also concedes that the judgment was, at least in part, uncontested. They further argue that U.S. Bank's claim fails because an entity other than Kingman Holdings recorded the judgment.

Texas Civil Practice and Remedies Code § 12.002 prohibits a person from making, presenting, or using a document or other record with:

> (1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;

> (2) intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and

> (3) intent to cause another person to suffer:

>> (A) physical injury;

>> (B) financial injury; or

>> (C) mental anguish or emotional distress.

U.S. Bank alleges that the state-court judgment that DiSanti relied on to convey the property was void. But the statute requires knowledge that a court record, lien, or claim against the property is fraudulent. It is not clear from the complaint whether U.S. Bank alleges that the state-court judgment was a "fraudulent court record" for purposes of § 12.002 or that the documents recorded by DiSanti and Blanchard were fraudulent claims against the property. But the response clarifies that U.S. Bank alleges that the lien was fraudulent, apparently because the defendants relied on a judgment that they knew was void.

The court need not decide whether U.S. Bank sufficiently alleged knowledge of a fraudulent lien. The complaint fails to allege the other elements of § 12.002, and that failure is dispositive.

Texas courts will not infer the intent to cause harm from either the defendant's knowledge that a record of a claim against real property is fraudulent or the defendant's mere act of recording the claim. *See Brasch v. Lane*, No. 01-09-01093-CV, 2011 WL 2183876, at *5 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Preston Gate, LP v. Bukaty*, 248 S.W.3d 892, 897 (Tex. App.—Dallas 2008, no pet.); *Aland v. Martin*, 271 S.W.3d 424, 432 (Tex. App.—Dallas 2008, no pet.). And the Fifth Circuit has held that failure to allege the defendant's intent to cause harm fails to state a claim even if the plaintiff alleges that the defendant actually caused harm. *Suri Holdings, L.L.C. v. Argent Mortg. Co.*, No. 21-20137, 2021 WL 5985320, at *4 (Dec. 16, 2021).

U.S. Bank's complaint sufficiently alleges that DiSanti and Kingman Holdings knew that the state-court default judgment was void and that DiSanti coordinated the recording of deeds in the local property records with the intent to trick title companies into issuing title policies. But U.S. Bank does not allege that DiSanti did so with the requisite intent to cause someone to suffer physical, financial, or emotional harm. Tex. Civ. Prac. Rem. Code § 12.002(a)(3). The complaint further alleges that Blanchard signed at least one deed with "full knowledge of the scheme or plan to strip [U.S. Bank] of its lien interest" and that he knew that the documents were "wrongfully obtained and void." Dkt. 1 at 11. But it fails to allege that Blanchard had either the intent that the documents be given legal effect or the intent to cause harm. The complaint therefore fails to state a claim that DiSanti, Kingman Holdings, or Blanchard violated § 12.002.

## V. Fraud and Civil Conspiracy

The complaint asserts claims for common-law fraud and civil conspiracy against DiSanti, Blanchard, and Kingman Holdings. It alleges that the three coordinated to create a trail of conveyances, based on the void default judgment, to strip U.S. Bank of its lien and sell the house to the unsuspecting Lals. Dkt. 1 at 12–14. According to U.S. Bank, the defendants wrongfully remained silent when they had a duty to disclose their knowledge of the lien, and U.S. Bank was harmed because it cannot enforce its lien against the property.

The defendants' motions argue that the complaint fails to state a claim for common-law fraud because it does not allege that the defendants made any false representation to U.S. Bank or that U.S. Bank relied on any such representation. Dkts. 17 at 3, 25 at 7. They argue that the claim for civil conspiracy fails because the complaint does not plead a meeting of the minds, an unlawful purpose, or any underlying tort. *Id.*

Under Texas law, there are two types of common-law fraud: actual fraud and constructive fraud. U.S. Bank does not identify which of those theories it intends to pursue, so the court will consider both. As already noted, claims for fraud are subject to heightened pleading standards under Rule 9(b). U.S. Bank fails to allege all elements of either type of fraud, so its common-law fraud claim must fail. And its claim for civil conspiracy, which relies on allegations of the underlying fraud, also fails for lack of essential elements.

### A. Actual fraud

The elements of actual fraud are: "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011).

The complaint does not identify any false representation made by any defendant. Instead, it alleges that the defendants "concealed any knowledge they had" of U.S. Bank's lien on the

property and "wrongfully stayed silent despite having a duty to speak." Dkt. 1 at 13. A failure to disclose information constitutes fraud only if there is a duty to disclose the information. *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). "Thus, silence may be equivalent to a false representation only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent." *Id.* Such a duty to disclose generally arises only in the context of a confidential or fiduciary relationship. *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998). U.S. Bank does not allege that it had a confidential or fiduciary relationship with any defendant, and its complaint identifies no other basis establishing a duty to disclose. Its claim of actual fraud, assuming that is the type of fraud claim the bank asserted, could be dismissed on that ground alone.

As to the other elements, the complaint alleges that the defendants, by their silence, lured the Lals into buying the property. Dkt. 1 at 13. But it does not allege that U.S. Bank relied on the defendants' silence to do anything, and it identifies no law that would permit it to assert a fraud claim on behalf of the Lals. Those are additional bases for dismissal.

### B. Constructive fraud

Constructive fraud is "the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests." *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1964); *accord Keyes v. Weller*, 692 S.W.3d 274, 278 n.4 (Tex. 2024). Constructive fraud may be based on breach of a fiduciary duty or a confidential relationship. *Iraan-Sheffield ISD v. Kinder Morgan Prod. Co.*, 657 S.W.3d 525, 536 (Tex. App.—El Paso 2022, pet. denied); *see In re Kuykendall*, 206 S.W.3d 766, 770–71 (Tex. App.—Texarkana 2006, no pet.) (holding that a constructive-fraud claim failed because the defendant, who probated a will as a muniment of title, was not in a confidential relationship with the plaintiffs and no fiduciary duty was created by his actions); *Hubbard v. Shankle*, 138 S.W.3d 474, 483 (Tex. App.—Fort Worth 2004, pet. denied) (noting that, to establish a constructive-fraud claim, "there must be a preexisting special relationship of trust and confidence that is betrayed in later dealings").

As noted above, U.S. Bank does not identify any confidential relationship or fiduciary duty that would allow it to state a claim for constructive fraud. So to the extent the bank asserts such a claim, it, too, is subject to dismissal.

## C. Civil Conspiracy

Under Texas law, civil conspiracy is a "derivative tort," meaning that it "survives or fails alongside" "some underlying tort or other illegal act." *Agar Corp. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136, 140–41 (Tex. 2019). The elements of civil conspiracy are "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Id.* The damages alleged must be caused by the underlying wrongful act, not the conspiracy to commit it. *Id.* at 142.

The complaint satisfies the first three elements. It alleges the involvement of DiSanti, Blanchard, and Kingman Holdings. It identifies the object to be accomplished by the alleged conspiracy: "strip[ping] [U.S. Bank]'s lien from the Property and sell[ing] the Property to unsuspecting purchasers for a substantial profit." Dkt. 1 at 13. And it alleges that the defendants "coordinated together to create a trail of deed records" as part of a "profit-sharing agreement." Dkt. 1 at 12–13.

As to the fourth element, the "unlawful, overt act" alleged is common-law fraud. Dkt. 1 at 12. U.S. Bank's response to DiSanti's motion to dismiss attempts to recharacterize the civil-conspiracy claim as one based on malicious prosecution. Dkt. 18 at 7. But in considering a motion to dismiss, the court may look only to the complaint and any attachments to it. *Cornish*, 402 F.3d at 549. As already explained, U.S. Bank's complaint fails to state a claim for either actual or constructive fraud because its claim depends on the defendants' silence or omission. Silence or omission will support a fraud claim only where a duty to disclose exists. Because U.S. Bank has not pled a duty to support its fraud-by-omission theory, it has not alleged the fourth element of a civil conspiracy.

As to the fifth element, U.S. Bank alleges that the defendants defrauded the Lals, not it, so any damages caused by the underlying tort accrued to them. Alternatively, the complaint alleges that

"should [U.S. Bank] be unable to enforce its lien due to the conspirators' actions, it has suffered damages resulting from the loss of its ability to enforce that lien interest on the Property, the costs incurred in having to set the default judgment aside; and attorneys' fees incurred in getting the default judgment vacated." Dkt. 1 at 14. But U.S. Bank does not allege that it has actually incurred any of those damages. It is not clear from the complaint whether U.S. Bank has attempted to enforce its lien and failed or whether it has attempted to have the default judgment vacated. Such speculative or contingent damages cannot support a civil-conspiracy claim. *Noe v. Velasco*, 690 S.W.3d 1, 5 (Tex. 2024) (explaining that "damages are meant to compensate for the injury done").

## VI. Fraud in a Real-Estate Transaction

The complaint alleges that Kingman Holdings, DiSanti, and Blanchard committed fraud in a real-estate transaction within the meaning of Texas Business and Commerce Code § 27.01 by failing to disclose their knowledge of the fraudulent nature of the state-court default judgment. Dkt. 1 at 14–15. It also alleges that Blanchard had a duty to disclose DiSanti's ongoing scheme to obtain fraudulent default judgments, that the defendants did so with the intent to defraud the Lals by inducing them to purchase the house, and that U.S. Bank has suffered harm by being forced to litigate to protect its interest in the property. *Id.*

The defendants argue that U.S. Bank fails to allege any of the required elements of the statutory cause of action. Dkts. 17 at 5, 25 at 8. They assert that the complaint neither identifies any false representation made by a defendant nor alleges that the fraud actually resulted in a conveyance between the parties. Dkt. 25 at 8.

Texas Business and Commerce Code § 27.01 defines two types of fraud in real-estate transactions: those based on false representations of existing facts, and those based on false promises to act. The former type of fraud is actionable when "the false representation is (A) made to a person for the purpose of inducing that person to enter into a contract; and (B) relied on by that person in entering into that contract." Tex. Bus. Comm. Code § 27.01(a)(1). A fraud based on a false promise is actionable when "the false promise is (A) material; (B) made with the intention of not fulfilling it; (C) made to a person for the purpose of inducing that person to enter

into a contract; and (D) relied on by that person in entering into that contract." *Id.* § 27.01(a)(2). Violations of either type render the defendant "liable to the person defrauded." *Id.* § 27.01(b)–(e).

U.S. Bank alleges that DiSanti, Blanchard, and Kingman Holdings defrauded the Lals by failing to disclose the "fraudulent nature of the default judgment taken against" U.S. Bank and the "substantial risk" that the Lals would have to defend their title against U.S. Bank. Dkt. 1 at 14–15. Those allegations fail to state a claim under § 27.01 for several reasons.

First, § 27.01 requires a misrepresentation, but U.S. Bank's claim revolves around the defendants' failure to disclose pertinent information, not any affirmative misrepresentation. U.S. Bank identifies no authority extending the common-law fraud-by-omission theory to the statutory claim it brings under § 27.01, and the court is aware of none.

Second, § 27.01 applies to a person who relies on a misrepresentation when entering into a contract. U.S. Bank identifies no contract between itself and any defendant.

Finally, although § 27.01 makes a defendant liable to the person defrauded, U.S. Bank's complaint alleges that the Lals and their title-insurance company, not U.S. Bank, relied on the defendants' representations or omissions to purchase the property. Dkt. 1 at 15. The Lals are parties to this suit and have not asserted any common-law or statutory fraud claims against the other defendants. The title company is not a party.

In short, U.S. Bank's § 27.01 claim fails because it seeks to vindicate rights that belong to other parties. The statute does not entitle it to relief for wrongs done to others.

## VII.    Malicious Prosecution

U.S. Bank alleges that DiSanti and Kingman Holdings engaged in malicious prosecution in the state-court suit. Dkt. 1 at 15–16. The complaint relies on DiSanti's pattern of suing mortgagees to demonstrate that he acted with malice. It also insists that there was no probable cause for DiSanti to believe that U.S. Bank's interest in the property was invalid.

DiSanti's motion to dismiss argues that U.S. Bank does not allege any facts to show malice in the underlying case because it relies entirely on DiSanti's conduct in separate cases. Dkt. 17 at 5. It also points out that U.S. Bank acknowledged the existence of a second lien that was the subject

of the state-court case, and it does not argue that DiSanti lacked probable cause to sue on that lien. *Id.* at 5–6. The joint motion to dismiss argues that U.S. Bank cannot prevail because it does not allege that the state-court suit ended in its favor. It also argues that U.S. Bank failed to allege facts supporting malice or a lack of probable cause.

A claim for malicious prosecution of a civil claim under Texas law has six elements: (1) the institution or continuation of civil proceedings against the plaintiff; (2) by or at the insistence of the defendant; (3) malice in the commencement of the proceeding; (4) lack of probable cause for the proceeding; (5) termination of the proceeding in plaintiff's favor; and (6) special damages. *Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207 (Tex. 1996). Termination of the proceeding in the plaintiff's favor is determined only after exhaustion of the appellate process. *Id.* at 208. Special damages must be more than "the ordinary losses incident to defending a civil suit, such as inconvenience, embarrassment, discovery costs, and attorney's fees" and must include "some physical interference with a party's person or property in the form of an arrest, attachment, injunction, or sequestration." *Id.* at 208–09.

U.S. Bank's claim for malicious prosecution founders at every turn.

The bank sues as trustee for RASC 2006 EMX*5*, the trust that held the lien for the primary mortgage. The complaint alleges that the state-court judgment is void because it named U.S. Bank as trustee for RASC 2006 EMX*6*, the trust that held the lien for the second mortgage, as the defendant. U.S. Bank cannot have it both ways. Either it was the defendant named and served in the state-court proceeding, and as such is responsible for defaulting, or it was not the defendant named in that suit, such that its claim for malicious prosecution fails at the first element.

U.S. Bank also fails to allege facts tending to show that the state-court suit was brought by or at the insistence of Kingman Holdings or DiSanti. According to the complaint, Ohio Gravy Biscuit filed the suit. Dkt. 1 at 6–7. That entity is not a defendant here. And although U.S. Bank alleges that Ohio Gravy Biscuit was DiSanti's "alter ego," it alleges no facts to support that theory. Dkt. 1 at 6.

As to the third and fourth elements, U.S. Bank generally alleges that the defendants acted with malice and lacked probable cause but again fails to identify any facts tending to support those allegations. And on the fifth element, U.S. Bank does not and cannot allege that the proceeding was eventually decided in its favor; it alleges the opposite.

In its response to the joint motion, U.S. Bank cites *Kingman Holdings, LLC v. Mortgage Electronic Registration Systems, Inc.*, No. 05-15-01353-CV, 2016 WL 8115937, at *5 (Tex. App.—Dallas 2016, no pet.), in arguing that it may collaterally attack the allegedly void default judgment through a claim for malicious prosecution. Dkt. 30 at 15. That case supports the general proposition that a void judgment is subject to collateral attack by a nonparty whose rights are affected by it. But it does not address a claim for malicious prosecution or explain how U.S. Bank may avoid dismissal of that claim despite conceding that the underlying state-court case was not resolved in its favor.

U.S. Bank also fails to satisfy the sixth element, special damages. The complaint repeatedly alleges that the bank's damages are those related to litigating its interests. Litigation costs are not the type of "special damages" necessary to support a malicious-prosecution claim. *Tex. Beef Cattle Co.*, 921 S.W.2d at 208–09.

## VIII.   Sanctions

U.S. Bank finally asks the court to exercise its inherent authority to impose a host of injunctive sanctions against DiSanti, Kingman Holdings, and Blanchard. Dkt. 1 at 16–18. The motions to dismiss argue that there is no independent cause of action for sanctions and that the court lacks authority to impose sanctions on defendants for their conduct in other courts. Dkts. 17 at 6, 25 at 9. They further argue that the complaint fails to allege facts sufficient to support sanctions. *Id.*

The court has authority to impose sanctions pursuant to statute, the Federal Rules of Civil Procedure, the local rules, and its inherent powers. 28 U.S.C. § 1927; *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991); *see* Fed. R. Civ. P. 11(c), 16(f), 37, 83; Loc. R. CV-65.1. But the defendants are correct that there is no independent cause of action for sanctions. The vehicle for requesting sanctions is a motion, *see* Fed. R. Civ. P. 7(b)(1), which in this court must be filed separately from a pleading or other document, Loc. R. CV-7(a).

The court is not limited to imposing sanctions for conduct that occurs in the courtroom. *Chambers*, 501 U.S. at 57. The court agrees with the defendants that U.S. Bank has not alleged facts sufficient to entitle it to an award of sanctions at this time. But because the sanction power is an exercise of the court's authority to control its docket and ensure compliance with its orders, a litigant may move for sanctions whenever sanctionable conduct arises.

## RECOMMENDATION

It is **RECOMMENDED** that the motions to dismiss, Dkts. 17, 25, be **GRANTED IN PART** and **DENIED IN PART**. The motions should be denied as to U.S. Bank's declaratory-judgment claim regarding the validity and priority of its lien. They should be granted as to all other claims against DiSanti, Blanchard, and Kingman Holdings. U.S. Bank's claims for slander of title, violation of Texas Civil Practice and Remedies Code § 12.002, common-law fraud, civil conspiracy, fraud in a real-estate transaction under Texas Business and Commerce Code § 27.01, and sanctions should be **DISMISSED WITHOUT PREJUDICE**. U.S. Bank's claim for malicious prosecution should be **DISMISSED WITH PREJUDICE**, as U.S. Bank affirmatively alleges that it lost in state court.

*    *    *

Within 14 days after service of this report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a de novo review by the district court of the findings and conclusions contained in this report only if specific objections are made. *Id.* § 636(b)(1). Failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*; 28 U.S.C. § 636(b)(1) (extending the time to file objections from 10 to 14 days).

18

So **ORDERED** and **SIGNED** this 13th day of February, 2025.

_____

Bill Davis
United States Magistrate Judge