IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **U.S. BANK TRUST NATIONAL ASSOCIATION** *as Trustee for RASC 2006-EMX5* §§§§ | |
| v. § | NO. 4:23-CV-00597-ALM-BD |
| **KINGMAN HOLDINGS, LLC** *et al.* §§§ | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

In this diversity case, U.S. Bank Trust National Association, in its capacity as trustee for RASC 2006-EMX5, a lienholder-trust, sued the Kingman defendants (Kingman Holdings, LLC, both individually and as trustee for the Love Bird 218 Land Trust; Mark DiSanti; and Ted Blanchard) and Yasir and Mahwish Lal. Dkt. 1. U.S. Bank alleges that the Kingman defendants engaged in a fraudulent scheme to deprive it of its lien on a property that was later sold to the Lals. *Id.* UIF Corporation, the Lals' mortgage lender, intervened. Dkt. 26. The Lals moved for summary judgment. Dkt. 36; *see* Dkts. 37 (response), 38 (reply). The court will recommend that the motion be denied.

## BACKGROUND

### I. Factual Background

The court previously recounted the somewhat convoluted factual background of this case. *See* Dkt. 40 at 1–3. To summarize, two trusts (EMX5 and EMX6, for short) held liens on a house. U.S. Bank was the trustee of both. The Kingman defendants bought the house at a foreclosure sale, then transferred ownership to Ohio Gravy Biscuit, a nonparty entity. Ohio Gravy Biscuit sued U.S. Bank as trustee for just one of the trusts, EMX6, in state court. But the court rendered a default judgment that purportedly discharged both EMX6's and EMX5's liens against the property despite Ohio Gravy Biscuit's failure to serve U.S. Bank as trustee for EMX5, the plaintiff here.

Ohio Gravy Biscuit and the Kingman defendants transferred title to the house through several entities. Eventually, the Lals bought the house.

## II. Procedural Background and the Parties' Contentions

U.S. Bank originally alleged seven claims. After a round of dismissal motions filed by the Kingman defendants, *see* Dkts. 17, 25, 40, 41, just two claims against the Lals remain: a quiet-title action and a request for a declaration that the Lals (or anyone else taking title after the Kingman defendants) hold title subject to U.S. Bank's superior lien.

The Lals make two arguments in their summary-judgment motion. They first assert that U.S. Bank's remaining claims constitute an impermissible collateral attack on the state court's default judgment, which they contend is valid. Dkt. 36 at 1. The Lals' theory is that EMX5 received all of the process it was due in the state-court suit, and therefore cannot show that the default judgment rendered at the conclusion of that suit was void, because even though EMX5 was not a party to the suit, its interests were virtually represented through EMX6. Second, the Lals argue that the *Rooker–Feldman* doctrine, which generally bars a party who loses in state court from challenging the final state-court judgment against it in federal district court, strips this court of jurisdiction over U.S. Bank's claims.

In response to the first point, U.S. Bank asserts that the Supreme Court disfavors the doctrine of virtual representation, that no Texas court has applied the doctrine in an analogous circumstance, and that the requirements of privity and identity of interest were not met in the state-court proceeding. In U.S. Bank's view, that means it may still legitimately contend that the state court's default judgment is void based on insufficient process—a contention that, if accepted, would take its claims against the Lals outside the sphere of an impermissible collateral attack. On the second point, U.S. Bank asserts that the *Rooker–Feldman* doctrine does not apply when the state-court judgment at issue is void, so the court does not lack jurisdiction over its claims against the Lals.

Because the *Rooker–Feldman* doctrine is jurisdictional, the court will address it first even though the Lals presented it second. *See Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382 (5th Cir.

2

2013); Dkt. 36 at 1, 9–10. And although the Lals urged dismissal based on *Rooker–Feldman* in a motion for summary judgment, the court will construe that part of the filing as a motion to dismiss for lack of subject-matter jurisdiction and apply the appropriate standard. *See Stanley v. CIA*, 639 F.2d 1146, 1157 (5th Cir. Unit B 1981) (explaining that jurisdictional challenges "should be raised by a motion to dismiss for lack of subject matter jurisdiction rather than by a motion for summary judgment"); *Cano v. Assured Auto Grp.*, No. 3:20-CV-3501-G, 2021 WL 3036933, at *2 (N.D. Tex. July 19, 2021) (stating that "[a]n untimely Rule 12(b)(1) motion will be treated as a suggestion that the court lacks jurisdiction").

## LEGAL STANDARDS

### I. Challenges to Subject-Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) authorizes a motion to dismiss for "lack of subject-matter jurisdiction." The party asserting jurisdiction "constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

"In general, where subject matter jurisdiction is being challenged, the trial court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004). The court may find a lack of jurisdiction based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming*, 281 F.3d at 161. A motion to dismiss for lack of subject-matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction. *Davis v. United States*, 597 F.3d 646, 649 (5th Cir. 2009).

### II. Summary Judgment

A summary-judgment movant bears the initial burden of demonstrating, by reference to record evidence, if necessary, that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if, under the governing substantive law, it could affect the outcome of the

suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When the movant would bear the burden of proof at trial, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense" it seeks to prove. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But when the nonmovant would bear the burden of proof at trial, the movant may carry its initial summary-judgment burden by alleging that "the nonmovant has failed to establish an element essential to" its case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). The nonmovant may then avoid summary judgment by demonstrating the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[A] party opposing a properly-supported summary judgment motion may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Johnson v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 90 F.4th 449, 460 (5th Cir. 2024) (quotation marks omitted). The court must resolve all reasonable doubts in the nonmovant's favor. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. Unit B Sept. 1981).

## DISCUSSION

### I. *Rooker–Feldman*

Under the *Rooker–Feldman* doctrine, federal district courts lack subject-matter jurisdiction to review certain state-court judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005); *see D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923). Its application is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284. When a state trial court errs, the error "is to be reviewed and corrected by the appropriate state appellate court," not a federal court. *Liedtke v. State Bar of Tex.*,

4

18 F.3d 315, 317 (5th Cir. 1994). The doctrine also deprives federal courts of subject-matter jurisdiction where the "allegations are inextricably intertwined with the decision of the state courts." *Guajardo v. State Bar of Tex.*, 803 F. App'x 750, 753 (5th Cir. 2020) (quotation marks and citation omitted). The doctrine does not, however, bar federal review of state-court judgments that are void. *Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380, 385–87 (5th Cir. 2017).

The Fifth Circuit has identified two "hallmarks" of the *Rooker–Feldman* inquiry. *Truong*, 717 F.3d at 382. The first depends on "what the federal court is being asked to review and reject." *Id.* A federal court lacks jurisdiction under *Rooker–Feldman* only over "challenges to state court decisions in particular cases arising out of judicial proceedings." *Feldman*, 460 U.S. at 486. The doctrine does not bar federal-court review of properly presented challenges to state statutes, executive actions, or administrative rules. *Truong*, 717 F.3d at 382.

The second hallmark is "the source of the federal plaintiff's alleged injury." *Id.* The doctrine stymies a federal plaintiff who seeks relief from a state-court judgment based on that court's allegedly erroneous decision. *Id.* at 382–83. But it does not prohibit a federal plaintiff from asserting "as a legal wrong an allegedly illegal act or omission by an adverse party." *Id.* at 383.

For example, the plaintiff in *Truong* sued two banks in federal court after one of them foreclosed on her house and the other did not adequately process her application for a loan modification. She sought damages and a declaration that the underlying state-court judgment in the foreclosure action was based on inauthentic evidence. *Id.* at 384. The Fifth Circuit held that *Rooker–Feldman* did not bar her claim because she did not seek to overturn the allegedly erroneous state-court judgment and "the damages she requested were for injuries caused by the banks' actions, not injuries arising from the foreclosure judgment." *Id.* at 383. Instead, state-law preclusion principles prevented the federal court from entertaining her claim for a declaratory judgment because doing so would require relitigation of matters already decided. *Id.* at 388.

Boiled down to its essential elements, the *Rooker–Feldman* doctrine generally stays a federal district court's hand when "(1) a state-court loser; (2) alleg[es] harm caused by a state-court judgment; (3) that was rendered before the [federal] district court proceedings began; and (4) the

5

federal suit requests review and reversal of the state-court judgment." *Burciaga*, 871 F.3d at 384. But even when each of those elements is satisfied, the doctrine will not apply if either of two exceptions exists. First, federal courts do not "apply *Rooker–Feldman* to state decisions that would not be given preclusive effect under doctrines of res judicata and collateral estoppel." *Id.* at 387 (quotation marks omitted). And second, as already noted, the doctrine "does not preclude review of void state court judgments." *Id.* at 385.

Nonprecedential Fifth Circuit opinions handed down after *Burciaga* was decided have said different things about that second exception. *Compare Starks v. Davis*, No. 21-11154, 2022 WL 17591477, at *1 (5th Cir. Dec. 13, 2022) (per curiam) (asserting that "the cases that recognize the voidness exception indicate that it is presently limited to the bankruptcy context"), *Hutchings v. County of Llano*, No. 20-50885, 2022 WL 3716483, at *1 (5th Cir. Aug. 29, 2022) (per curiam) (stating that the Fifth Circuit has "neither recognized nor rejected that exception"), *and Nunu v. Texas*, No. 21-20446, 2022 WL 820744, at *2 (5th Cir. Mar. 17, 2022) (per curiam) (quoting *In re Cleveland Imaging & Surgical Hosp., L.L.C.*, 690 F. App'x 283, 286 (5th Cir. 2017), decided before *Burciaga*, to explain that "[t]his court has neither endorsed nor rejected [the voidness] exception"), *with In re Eichor*, No. 24-20238, 2025 WL 619168, at *3 n.3 (5th Cir. Jan. 28, 2025) (per curiam) (quoting *Burciaga* as support for the existence of the voidness exception), *Nicholson v. Bank of Am.*, No. 22-11064, 2023 WL 8434051, at *2 (5th Cir. Dec. 5, 2023) (per curiam) (concluding that *Rooker–Feldman* applied because the underlying judgment was not void), *and Raggio - 2204 Jesse Owens, L.L.C. v. Hattaway*, No. 20-50693, 2022 WL 3572694, at *4 (5th Cir. Aug. 19, 2022) (per curiam) (quoting *Burciaga* and recognizing the voidness exception). But under the rule of orderliness, the court's precedential opinion in *Burciaga* would control even if those subsequent opinions were also precedential. *See Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008) (explaining that "[i]t is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court").

6

The Lals might be able to demonstrate satisfaction of the final three *Rooker–Feldman* elements. The court need not decide whether they can, however, because the first element is not clearly met. In any event, U.S. Bank avoids dismissal under *Rooker–Feldman* because it has carried its burden to show that its suit falls within the void-judgment exception.

### A. "State-court loser" element

It is at best unclear that U.S. Bank as trustee for EMX5, which was not a party to the state proceedings, can be properly viewed as a state-court loser. The state court rendered a judgment that "certain deeds of trust recorded as Instruments 20060404000435780 and 200604000435790, deed records of Collin County, Texas, are hereby terminated, discharged and unenforceable." Dkt. 36-1 at 3. The instrument ending in 5780 is the deed of trust securing the original mortgage. Dkt. 37-1. That deed was assigned to U.S. Bank as trustee for EMX5. Dkt. 37-2. The state-court judgment therefore purports to terminate EMX5's interest in the property.

"[A] nonparty cannot be a state-court loser." *Raggio*, 2022 WL 3572694, at *3; *see Johnson v. De Grandy*, 512 U.S. 997, 1006 (1994) (noting that the *Rooker–Feldman* doctrine did not apply to a plaintiff that was "not a party in the state court" and was "in no position to ask [the Supreme] Court to review the state court's judgment and has not directly attacked it in this proceeding"). That said, the "nonparty" label is not applied rigidly; a third party named in the relevant state-court orders is not a nonparty for *Rooker–Feldman* purposes. *Raggio*, 2022 WL 3572694 at *3.

The state-court judgment that purports to terminate EMX5's deed of trust does not name EMX5. Dkt. 36-1. Nor does anything else identified by the parties in the state-court record. *See, e.g.*, Dkts. 37-10 (state-court petition), 37-11 (citation), 37-12 (return of service). Although EMX5's interests could be affected by the state-court judgment, the court cannot determine that EMX5 is a "state-court loser" for *Rooker–Feldman* purposes. But as explained below, it need not reach a definitive conclusion on that point because the voidness exception makes *Rooker–Feldman* inapplicable here.

7

### B. Void-judgment exception

As already noted, even if U.S. Bank's claims satisfied all four elements required to trigger *Rooker–Feldman*, it could still avoid dismissal on that ground if an exception applies. U.S. Bank makes no argument about the preclusive effect of the state-court judgment; it argues only that the judgment is void because it was rendered without service on the bank as trustee for EMX5. The Lals argue that the judgment is not void because EMX5 was virtually represented. As discussed below, that argument fails, and U.S. Bank has produced enough evidence that the judgment was rendered without sufficient notice to EMX5 to carry its burden to secure federal jurisdiction.

Notice is "[a]n elementary and fundamental requirement of due process." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). And under Texas law, a judgment may not be entered against a trustee, even if he appears individually in the litigation, unless he has been sued and served in his capacity as trustee. *Werner v. Colwell*, 909 S.W.2d 866, 870 (Tex. 1995).

The original petition names only "U.S. Bank, National Association, as Trustee for RASC 2006 EMX6" as a defendant. Dkt. 37-10 at 2. Only EMX6 was cited to appear. Dkts. 37-11, 37-12. As such, service on U.S. Bank as trustee of EMX6 was insufficient to provide it, as trustee of EMX*5*, with due process. U.S. Bank has therefore presented evidence tending to show that the default judgment affecting EMX5's interests is constitutionally infirm. *See Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84 (1988) (explaining that "[w]hen the defaulting party fails to appear due to a lack of proper notice, the subsequent judgment is constitutionally infirm"). A "constitutionally infirm default judgment is void." *Thompson v. Landry*, No. 23-0875, 2025 WL 1350003, at *4 (Tex. May 9, 2025).

And again, the *Rooker–Feldman* doctrine does not bar federal review of void state-court judgments. *Burciaga*, 871 F.3d at 385. It does, however, prohibit federal review of judgments that are merely voidable. *Id.*; *see United States v. Shepherd*, 23 F.3d 923, 925 (5th Cir. 1994).

"[T]he fact that a judgment may be erroneous does not render it void." *Ex parte La Rocca*, 282 S.W.2d 700, 703 (Tex. 1955). "A judgment is void only when it is apparent that the court rendering judgment had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no

8

jurisdiction to enter the particular judgment, or no capacity to act." *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex. 2010) (quoting *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005)). Proper service is required to establish personal jurisdiction. *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012). Without that jurisdiction, a judgment may be challenged as void. *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 272 (Tex. 2012).

U.S. Bank's argument that the state-court judgment was rendered without proper service is therefore a permissible collateral attack on an allegedly void judgment. The bank has produced enough evidence in support of that argument to show that *Rooker–Feldman* does not bar its suit.

## II. Preclusion Through Virtual Representation

"To determine the preclusive effect of a state court judgment in a federal action, federal courts must apply the law of the state from which the judgment emerged." *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 (5th Cir. 2006). Under Texas law, the equitable doctrine of virtual representation allows a nonparty to challenge a judgment if "(1) it is bound by the judgment; (2) its privity of estate, title, or interest appears from the record; and (3) there is an identity of interest between [it] and a party to the judgment." *State v. Naylor*, 466 S.W.3d 783, 789 (Tex. 2015); *see In re Lumbermens Mut. Cas. Co.*, 184 S.W.3d 718, 722 (Tex. 2006). But in *Taylor v. Sturgell*, the Supreme Court emphasized "the fundamental nature of the general rule that a litigant is not bound by a judgment to which she was not a party" and explained that virtual representation is a narrow exception to that rule. 553 U.S. 880, 898 (2008).

The Lals argue that U.S. Bank as trustee for EMX5 should be precluded from collaterally attacking the state-court judgment because it was virtually represented by EMX6. U.S. Bank argues that it was not virtually represented because its interest as trustee for EMX5 differed from that of EMX6. U.S. Bank is correct.

### A. Bound by the judgment

Neither party disputes that U.S. Bank as trustee for EMX5 is bound by the default judgment extinguishing its lien. That checks the first virtual-representation box.

9

### B. Privity

The Lals argue that privity exists because U.S. Bank is the trustee for both trusts and the interests of the two trusts are identical. U.S. Bank disputes the assertion of privity, arguing that the two trusts have conflicting interests.

There are three types of privity relevant to the virtual-representation inquiry: privity of estate, of title, and of interest. *Naylor*, 466 S.W.3d at 89. Privity of estate and title concern present interests in land and arise based on the relationship between a present holder and his predecessors. *See Tawes v. Barnes*, 340 S.W.3d 419, 429 (Tex. 2011); *Brownson v. Scanlan*, 59 Tex. 222, 228 (1883). As such, they are not relevant to lienholders. *See Migura v. Dukes*, 770 S.W.2d 568, 569 (Tex. 1989) (explaining that a lien is neither title nor an estate in property but rather "the right of recourse to sell specific property in satisfaction of a debt").

It is not clear how privity of interest differs from identity of interest, the third element of virtual representation. *See Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 653 (Tex. 1996) (stating that "[p]rivity exists if the parties share an identity of interests in the basic legal right that is the subject of litigation"); *see also Naylor*, 466 S.W.3d at 789–90 (discussing the first and third requirements of virtual representation but skipping privity); *Lumbermens*, 184 S.W.3d at 724–25 (focusing on identity of interests and concluding that virtual representation applied without discussing privity). But because, as explained next, EMX5 and EMX6 do not share an identity of interest, the court need not determine whether they also lack privity of interest.

### C. Identity of interests

The Lals argue that, despite representing different trusts, U.S. Bank is one entity and that its interests are not divided. U.S. Bank argues that its interests as trustee of EMX5 and EMX6 differed in the state-court litigation because, by the time of the state-court suit, EMX6 no longer held any interest in the property. U.S. Bank has the better argument.

Two entities share an identity of interests when their ultimate aims in litigation are the same. *Lumbermens*, 184 S.W.3d at 724. For example, two entities might share an interest in "protecting

10

the funds that the underlying judgment puts at risk" even though the legal theories they argue diverge. *Id.* at 724–25.

"[A] trust is created when one person (a 'settlor' or 'grantor') transfers property to a third party (a 'trustee') to administer for the benefit of another (a 'beneficiary')." *N.C. Dep't of Revenue v. The Kimberley Rice Kaestner 1992 Family Tr.*, 588 U.S. 262, 265 (2019). "As traditionally understood, the arrangement that results is not a distinct legal entity, but a fiduciary relationship between multiple people. The trust comprises the separate interests of the beneficiary, who has an equitable interest in the trust property, and the trustee, who has a legal interest in that property." *Id.* (cleaned up); *accord Ray Malooly Tr. v. Juhl*, 186 S.W.3d 568, 570–71 (Tex. 2006). A judgment cannot be rendered against a trust in its own name; the trustee, in his capacity as such, is the proper defendant. *Ray Malooly Tr.*, 186 S.W.3d at 571.

A trustee owes certain fiduciary duties to the trust's beneficiaries. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 199 (Tex. 2002). Those include "all of the duties imposed on trustees by the common law," Tex. Prop. Code § 113.051, and the duties to "invest and manage trust assets as a prudent investor would" and to "exercise reasonable care, skill, and caution." *Id.* § 117.004(a).

The Lals rely on *Mason v. Mason*, 366 S.W.2d 552, 554 (Tex. 1963), to support their argument. But that case does not apply here. *Mason* explains that a trustee, who owes a fiduciary duty to the trust beneficiaries, can virtually represent the beneficiaries and that a judgment against a trustee is not void for failing to join the beneficiaries. *Id.* That is because a trustee has a limited right to dispose of the trust property and owes duties to the beneficiaries to represent and defend their interests. *Id.* But here, the Lals insist that the presence of a trustee for one trust in the litigation (EMX6) protected the interests of a second trust (EMX5).

Under Texas law, EMX5 and EMX6 are separate relationships involving a common trustee, U.S. Bank, and each trust's beneficiaries, who (or which) have not been identified in this suit. The Lals argue that EMX5 and EMX6 had "the same interest in vigorously defending against being stripped of" their liens in the state-court proceeding. Dkt. 36 at 8. U.S. Bank disagrees, pointing

out that EMX6 no longer held a lien on the property. Its response attaches a release showing that the subordinate lien held by EMX6 and recorded in Collin County as instrument number 20060404000435790 was released in June 2019 after "full payment and satisfaction of the same." Dkt. 37-5. The Lals make no attempt to explain how EMX6, which no longer had any interest in the property, had the same ultimate aim in litigation as EMX5, which still had a lien to protect. That means the Lals have not established the requisite identity of interests.

## RECOMMENDATION

It is **RECOMMENDED** that the Lals' motion for summary judgment, Dkt. 36, be **DENIED**.

* * *

Within 14 days after service of this report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a de novo review by the district court of the findings and conclusions contained in this report only if specific objections are made. *Id.* § 636(b)(1). Failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*; 28 U.S.C. § 636(b)(1) (extending the time to file objections from 10 to 14 days).

So **ORDERED** and **SIGNED** this 30th day of May, 2025.

_____
Bill Davis
United States Magistrate Judge